133 N.J. Super. 445 (1975)
337 A.2d 381
NEW JERSEY TURNPIKE AUTHORITY, PLAINTIFF-APPELLANT,
v.
JOHN I. O'NEILL, AS SUBSTITUTED ADMINISTRATOR C.T.A. AND SUCCESSOR TRUSTEE UNDER THE WILL OF JOHN I. O'NEILL, DECEASED, AND AS EXECUTOR UNDER THE WILL OF CATHERINE O'NEILL, DECEASED; JOHN I. O'NEILL, INDIVIDUALLY, AND ROSANNE O'NEILL, HIS WIFE; PETER L. O'NEILL AND GRETA B. O'NEILL, HIS WIFE; AND JAMES ROGERS O'NEILL AND ANDREA O'NEILL, HIS WIFE; THE BOROUGH OF EAST RUTHERFORD, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY; AND THE STATE OF NEW JERSEY, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued February 3, 1975.
Decided April 15, 1975.
*447 Before Judges MICHELS, MORGAN and MILMED.
Mr. Bernard M. Reilly argued the cause for the appellant.
Mr. John C. Heavey argued the cause for the respondents (Messrs. Carpenter, Bennett & Morrissey, attorneys; Mr. James R. Lamb, on the brief).
PER CURIAM.
In this condemnation case plaintiff-condemnor, New Jersey Turnpike Authority, appeals from a judgment of the Law Division entered after a nonjury trial awarding defendant O'Neill $199,660 plus interest as compensation for the parcel taken and consequential damages to the property remaining in defendants' ownership.
In July 1967 plaintiff, as part of its Turnpike widening program, filed its complaint and declaration of taking of approximately five acres (parcel 2R420) of the northwesterly section of the approximately 15-acre O'Neill holdings in East *448 Rutherford in the Hackensack Meadowlands area. The total holdings (Lots 36, 36B and 37B in Block 108A on the East Rutherford Tax Map) were bounded on the north by westbound Route 3, on the south by eastbound Route 3, and extended from the Hackensack River on the east to the connecting ramp between Routes 3 and 20 on the west. Access to the property was possible from Route 3 eastbound, but physically impossible from Route 3 westbound. The property is traversed by 2 tidal streams, Blackman's Creek and Branch Creek. It is also traversed by an easement of the Transcontinental Gas Pipeline Corporation for an underground pipe line. The appointment of condemnation commissioners was stayed pending the outcome of litigation between O'Neill and the State Highway Department to determine title to the property. For a history of that litigation see O'Neill v. State Highway Dept., 77 N.J. Super. 262 (App. Div. 1962), rev'd 40 N.J. 326 (1963); and see, O'Neill v. State Highway Dept., 50 N.J. 307 (1967), in which the cause was remanded for retrial on the issue whether the lands were tidelands. Thereafter, the question of title was resolved by a consent judgment filed June 1, 1972, which, among other things, declared the beds of the two creeks to be owned by the State as riparian lands of the State free of any claim by O'Neill. The condemnation action was then reactivated. The condemnation commissioners subsequently appointed made an award of $165,000, from which the New Jersey Turnpike Authority appealed to the Law Division. A motion by the Authority to amend its complaint and declaration of taking to show an access easement to the remaining property of O'Neill was denied. Following a nonjury trial, the court made its award of compensation for the taking (at $20,000 an acre) and consequential damages to the remainder (in the sum of $100,960) totaling $199,660 plus interest.
On this appeal plaintiff contends in the main that the trial judge erred in allowing consequential damages and in fixing the compensation to be paid for the property taken. We agree. The beds of Blackman's and Branch creeks, riparian *449 lands owned by the State, effectively divide defendants' lands into three separated and noncontiguous parcels. Title to the beds of these creeks was never in defendants. No application was ever made by them for a conveyance of the State's rights in these riparian lands. See N.J.S.A. 12: 3-7; 12:3-10; 13:1B-13 et seq.; 13:1D-3(b). They had no right of access or ownership in these lands. There was no unity of use of the three separated and noncontiguous parcels. There was no functional relationship between them. They were separate, independent parcels. In the circumstances there was no lawful basis for an award of consequential damages. See 4A Nichols on Eminent Domain (rev. 3 ed. 1974), §§ 14.3, 14.31[1]; 29A C.J.S., Eminent Domain, § 140 at 592; 1 Orgel, Valuation Under The Law of Eminent Domain (2 ed. 1953), § 47 at 228-232; Bergen Neck Ry. Co. v. Point Breeze Ferry Co., 57 N.J.L. 163 (E. & A. 1894); Annotation, "Unity or contiguity of properties essential to allowance of damages in eminent domain proceedings on account of remaining property," 6 A.L.R.2d 1197, §§ 11-14 at 1219-1226. It is clear that the property actually taken did not constitute "an integral and inseparable part of a single use to which the land taken and other adjoining land" was put. State v. Elizabeth Bd. of Ed., 116 N.J. Super. 305, 315 (Law Div. 1971). And see, Public Service Elec. & Gas Co. v. Oldwick Farms, Inc., 125 N.J. Super. 31, 37 (App. Div. 1973), certif. den. 64 N.J. 153 (1973).
It is well settled that when the whole or a part of a particular tract of land is taken for public use, the owner of such land is not entitled to compensation for injury to other separate and independent parcels belonging to him which result from the taking. [4A Nichols on Eminent Domain (rev. 3 ed. 1974), § 14.3 at XX-XXX-XX-XXX]
In their "Counter-Statement of Facts" contained in their brief submitted on this appeal, defendants, referring to the respective positions of the parties in the trial court on the issue of consequential damages, say that
*450 On the question of consequential damages to the 9.4758 acre remainder, there was a significant difference of opinion between the parties. The Authority contended that the remainder was comprised of three separate parcels of land with, by far, the largest parcel (some 8.6738 acres) being "noncontiguous" to the condemned property as a result of the State judicially determined ownership of the bed of Blackman's Creek which is situated between the area of the taking and the major portion of the remainder. Based upon this view, the Authority's appraiser opined that there was virtually no damage to the remainder.

* * * * * * * *
It was O'Neill's position that the State's riparian title to the bed of Blackman's and Branch Creeks did not create separate parcels since O'Neill had a statutory preemptive right as upland owner to routinely obtain title to the beds of those creeks from the State as of the taking date. Based upon this analysis, defendant's appraiser testified that the landlocked remainder had a value of $12,000.00 per acre on the date of taking and was damaged to the extent of 90% by the taking.
Defendants argue:
As is indicated by the Boswell map of the premises (Da inside back cover), that portion of the remainder which is in dispute lies to the east of Blackman's Creek while the land involved in the taking lies to the west of that creek. It is evident, therefore, that a strip of land judicially determined to be owned by the State in 1967 lies between the area of the taking and that which has been judicially held to constitute O'Neill's remainder. Such intervening ownership and lack of unitary use, the Authority contends, resolves the ultimate question of consequential damages adversely to the condemnee. However, in reaching this conclusion, the Authority has chosen to ignore the fact that O'Neill was denied the statutory option to routinely acquire title to the creek beds from the State as of the 1967 taking date. As the State's representative, Johnson, testified, had O'Neill applied for a grant of title to the creek beds in 1967, such grant would have been routinely issued.
Accepting defendants' thesis, the trial court premised its award of consequential damages upon the assumption "that the defendant could have acquired title to the creek beds from the State for $1,000 per acre, or a total of $1,440."
The error in the trial court's assumption and the lack of merit in defendants' contention is that both are grounded *451 on pure speculation. As pointed out in LeCompte v. State, 65 N.J. 447 (1974):
No one disputes the proposition that tidal lands, lying between mean high and low water marks, are owned by the State, to the extent they have not been validly conveyed to others. Bailey v. Driscoll, 19 N.J. 363, 367 (1955); Ross v. Mayor, etc., of Borough of Edgewater, 115 N.J.L. 477, 483 (Sup. Ct. 1934), aff'd 116 N.J.L. 447 (E. & A. 1936), cert. den. 299 U.S. 543, 57 S.Ct. 37, 81 L.Ed. 400 (1936); Schultz v. Wilson, 44 N.J. Super. 591, 596 (App. Div. 1957), certif. den. 24 N.J. 546 (1957). As the holder of such title the State possesses all attributes of ownership, including the right, subject to the demands of the public trust doctrine, to grant or alien the lands so held. In large measure the responsibility of overseeing and controlling tidelands has been allocated by the Legislature to the Department of Environmental Protection. Within that Department the Natural Resource Council has been empowered to negotiate leases and conveyances on behalf of the State. N.J.S.A. 12:3-7; 12:3-10; 13:1B-13; 13:1D-3(b). The Council is given the right to fix such price or compensation as it shall see fit as consideration for any such lease or conveyance. Id.

* * * * * * * *
Finally, it is important to bear in mind that the State is under no obligation to convey riparian lands when requested to do so, but may, if it sees fit, simply continue to retain title. [at 450-451; emphasis supplied]
Defendant's right under N.J.S.A. 12:3-10 to apply for a conveyance to them of title to the creek beds can, therefore, in no way be equated with what they conceive is a "statutory option to routinely acquire" such title from the State. There was clearly no showing by defendants that at the time of the taking in July 1967 there was a reasonable probability that they would acquire ownership of the creek beds in the reasonably near future. See N.J. Turnpike Authority v. Bowley, 27 N.J. 549, 555-556 (1958), cert. den. 358 U.S. 927, 79 S.Ct. 312, 3 L.Ed.2d 301 (1959); State v. Gorga, 26 N.J. 113 (1958). In the factual situation of the case no such showing could be made. As it turned out, at the time of trial, which was more than six years after the taking, defendants had still not even applied for a riparian grant from the State. N.J.S.A. 12:3-7; 12:3-10; 13:1B-13 et seq.; 13:1D-3 (b).
*452 Accordingly, the award of consequential damages cannot stand and is, in its entirety, vacated. The remaining component of the judgment appealed from, i.e., the award of compensation for the parcel actually taken, is set aside. The proper valuation of that parcel is to be determined following a new trial, on that issue only, at which the proof is to be limited "to the value of the land as of the control date, i.e., the date of taking, in the condition of the land at that time and to the uses to which it is naturally adapted and restricted." Port of N.Y. Authority v. Howell, 59 N.J. Super. 343, 347 (Law Div. 1960), aff'd 68 N.J. Super. 559 (App. Div. 1961), certif. den. 36 N.J. 144 (1961). See also, State v. Mehlman, 118 N.J. Super. 587 (App. Div. 1972).
In his testimony as a real estate expert on behalf of defendants, Sanford Krasner emphasized that his appraisal "does not take into consideration in any fashion any possibility that the State owns the two creeks"; and that his "assumption" was "that there was no ownership by the State, or if there was ownership by the State this was contiguous use." His valuation of the parcel taken as an integral part of the overall holdings of defendants in the area ignores the actual condition of the land and is without substance. The trial judge's reliance upon that valuation in fixing the compensation to be paid for the property actually taken invalidates that portion of its judgment. On the new trial which is ordered, the parcel taken is to be valued as a separate, independent parcel, and not as an integral part of the remaining parcels in defendants' ownership.
The judgment under review is reversed and the case is remanded to the Law Division for further proceedings consistent with this opinion.