HOUSING AUTHORITY OF THE CITY OF NEWARK, A BODY CORPORATE AND POLITIC, PLAINTIFF-RESPONDENT, v. NORFOLK REALTY COMPANY AND DAVIS WHITE CO., INC., DEFENDANTS-APPELLANTS.

Argued May 24, 1976—Decided October 6, 1976.

316

*Mr. Joseph R. McMahon* argued the cause for appellants (*Messrs. Lum, Biunno and Tompkins,* attorneys; *Mr. McMahon,* of counsel; *Mr. Walter J. Fessler,* on the brief).

*Mr. Ferdinand J. Biunno* argued the cause for respondent (*Messrs. Friedman and D'Alessandro,* attorneys; *Ms. Lauren B. Cohen,* on the brief) .

The opinion of the court was delivered by

PASHMAN, J. This is a condemnation case presenting three main issues. First, the Court is called upon to decide whether a condemnee can recover severance damages with respect to a parcel of land which is not physically contiguous to the property condemned but which is used as a unit. Second, the Court must determine if ownership by an identical entity of both the condemned portion and the remaining parcel is a prerequisite for recovery of severance damages. Finally, we are asked to clarify *N. J. S. A.* 20:3–13 (b) by deciding whether it requires the condemnor or the condemnee to proceed first at a trial *de novo.*

Norfolk Realty Company (hereinafter "Norfolk") is a partnership in which Franklin F. Davis, Myron Davis and Felix I. Delgato each hold an equal interest. Davis White, Incorporated (hereinafter "Davis White") is a New Jersey corporation which processes meat. Its shares are also owned equally by the three Norfolk partners. Norfolk's main plant is located on the eastern side of the road at 218-222 Norfolk Street in Newark. Davis White owns a specific portion of the main plant realty; Norfolk owns the remainder and leases it to Davis White. Norfolk also owns the condemned parcel located at 219-221 Norfolk Street, being on the westerly side of the street and opposite the main plant.

Having been designated a blighted area in 1964, land on both sides of Norfolk Street in the neighborhood of the Davis White plant was being considered by the City of Newark for its proposed Fairmont Urban Renewal Project. At that time, the Norfolk-Davis White interest did not own any property on the west side of the street, the business being conducted solely on the east side. When the proprietors of the business were considering expansion, representatives of Davis White met with representatives of the City of Newark

and the Newark Housing Authority to determine whether it could safely use land on both sides of Norfolk Street in the planned expansion and modernization of its facility. After consideration of the Fairmont Project proposal was terminated, Davis White received assurances from the City that this area was no longer under consideration for condemnation. Consequently, Norfolk bought the parcel on the west side of Norfolk Street which is now the subject of this litigation. In 1968 Davis White completed at a cost of over a half million dollars an extensive modernization and expansion project which included installation of new processing equipment in the main plant and construction of a warehouse-garage at 219-221 Norfolk Street. The credit of both firms and the individual guarantees of the stockholders-partners were utilized to secure the necessary funds.

In 1972 the Newark Community Council, which had assumed responsibility for developing the area, decided to condemn the warehouse-garage in order to facilitate the proposed expansion of the Martland Medical Center. A condemnation proceeding therefor was instituted in March 1972 by the City of Newark. At the hearing before the condemnation commissioners to determine the fair value of the property, there was disagreement as to whether the condemnee should be awarded severance damage for injury to the property on the east side of the street. Upon application for instructions, the Law Division prohibited the condemnee from proving such damage. A motion for leave to appeal this ruling was denied by the Appellate Division. Thereafter, damages for the warehouse-garage property were assessed by the condemnation commissioners in the amount of $75,000.

Pursuant to *N. J. S. A.* 20:3–13 a trial *de novo* was held before the Law Division. The trial judge considered himself bound by the previous ruling regarding severance damage but allowed the condemnee to make an offer of proof with respect to that issue in order to perfect a record on appeal. The severance damages allegedly sustained were $142,073.

The Appellate Division affirmed the judgment below. This Court granted certification. 68 *N. J.* 492 (1976). We reverse and remand.

Based on the evidence offered as to severance damage, the Appellate Division concluded that "Condemnation of the separate garage parcel has not effectively damaged the principal use for which the tract was designed." The Appellate Division also held that the Law Division had the discretionary power to require the condemnee to proceed first at the trial *de novo*. The unity of ownership issue was not reached.

The landowner, Norfolk, claims that the condemned warehouse-garage was a functionally integrated part of the Davis White meat processing business, and that they were used together in an integrated manner known in the meat packing industry as the U-flow process. The condemnee was allowed to make a proffer of proof in support of these contentions which the Appellate Division described as follows:

On the condemned property, 219–221 Norfolk Street, was a one story cinderblock warehouse garage. Across the street on the other four lots is a modern processing plant for the operation of a wholly-integrated meat packing business with extensive refrigerated storage vaults of varying temperatures and receiving, processing, packaging and warehousing facilities for shipping and distributing frozen portion control and vacuum packaged meat to the ultimate food service industry and consumer.

The proffer classified the buildings, including the warehouse garage in question, as highly specialized and single purpose structures known in the trade as unique. When the plant was renovated a U-shaped flow and operational procedure was established which moved meat and other products through the plant and warehouse quickly and orderly. The freezing equipment is capable of freezing 3500 pounds of portion-controlled meat cuts on 18 adjustable loading stations in approximately two and a half hours, using freezing plates on top and below the package to be frozen and thus eliminating meat discoloration and shrinkage. The vacuum packaged plastic pouches can be shelved and aged for longer periods without fear of shrinkage or trim loss.

The refrigerated trucks are loaded with products at the end of the day, are driven across the street to the warehouse garage and stored there overnight for early morning deliveries. The garage has special wiring and power supply in order to keep the trucks under refrigera-

tion during the night. During the day the garage serves as a parking facility for plant employees. Fuel pumps to supply the truck fleet are located at the garage entrance and space is provided for daily garbage accumulation which must be kept apart from the processing plant by reason of federal regulation. A number of items were marked as offers of proof to support the contentions of defendants, including experts' appraisals and reports and various photographs and charts. Admittedly, defendants could obtain another site for the garage within the same block in which the meat processing plant is located.

Defendants contend the garage forms an integral part of the overall facility which cannot be separated from it without causing detrimental effects on the operation. Plaintiff alleges the two properties do not constitute a common tract by reason of their physical noncontiguity and their separate uses.

██ Severance damage in condemnation cases can occur only when there is a partial taking of another parcel of property. The traditional measure of damages for such a taking may be stated as either (1) the value of the property actually taken together with the diminution in value of the part that remains (severance damage) or (2) the difference between the value of the entire property before the taking and the value of the remainder after the taking. *Washington Market Enterprises v. Trenton*, 68 *N. J.* 107, 117 (1975); *Ridgewood v. Sreel Investment Corp.*, 28 *N. J.* 121, 125 (1958); *State v. Cooper Alloy Corp.*, 136 *N. J. Super.* 560, 567–568 (App. Div. 1975). *State v. Interpace Corp.*, 130 *N. J. Super.* 322, 329 (App. Div. 1974).

██ The mere fact that the condemned parcel is physically separated from the remaining parcel does not foreclose a condemnee from recovering severance damages. *See New Jersey Turnpike Authority v. O'Neil et al.*, 133 *N. J. Super.* 445 (App. Div. 1975); *cf. Napier Hat Mfg. Co. v. Essex Co. Park Comm.*, 110 *N. J. L.* 213 (E. & A. 1933). Although this Court has not previously addressed itself to this problem, we find that the majority of American jurisdictions have permitted severance damages even though the property taken is physically separate from another parcel allegedly damaged as a result, providing

> there . . . [is] such a connection or relationship of adaptation, convenience, and actual and permanent use as to make the enjoyment of the parcel taken reasonably and substantially necessary to the enjoyment of the parcels left, in the most advantageous and profitable manner in the business for which they are used.

29A *C. J. S. Eminent Domain* § 140 at 591 n. 19 (citing jurisdictions which have adopted or considered the foregoing standard). *See also* 4A *Nichols, Eminent Domain,* § 14.31 [1] at 399 (Rev. 3d ed. 1974).

In order to obtain severance damages, the landowner must show that the remaining parcel and the parcel which has been taken were constituent parts of a single economic unit. *See State, Road Comm. v. Williams,* 22 *Utah* 2d 301, 452 *P.* 2d 548 (Sup. Ct. 1969). The fact that the condemned parcel and the remaining property do not have a common boundary[1] should not prevent the landowner from offering evidence concerning severance damages. If prior to the taking, the two parcels were functionally united, then it is quite possible that the landowner sustained a decrease in the utility, and hence the value, of the remaining parcel when the condemned property was taken. For this reason, functional unity and not spatial unity is the relevant consideration. *Baetjer v. United States,* 143 *F.* 2d 391 (1 Cir. 1944), *cert.* den., 323 *U. S.* 772, 65 *S. Ct.* 131, 89 *L. Ed.* 618 (1944).

The Appellate Division, holding against defendants, concluded that defendants' proofs failed to show that use of the garage facility to store the meat products overnight in refrigerated trucks was necessary for the use and enjoyment of the remaining plant property. The court

---

[1] Actually, in a technical sense, the condemned and remaining parcels in this case might very well be considered contiguous. The two parcels are across the street from each other. Generally, it is presumed that an abutting owner owns to the center of the highway. *Wolff v. Veterans of Foreign Wars, Post 4715,* 5 *N. J.* 143, 151 (1950); *Hinchman v. Paterson Horse Railroad Co.,* 17 *N. J. Eq.* 75, 83 (Ch. 1864).

thought the plant "not necessarily dependent upon the garage being at its present location albeit it is convenient and beneficial to have it there." We regard this reasoning as insufficient justification for disallowing severance damages based upon the value of the processing plant property. The question is not whether the remaining tract can continue to be used if different property is substituted for the condemned parcel, but solely whether there is in fact an integrated use of both at the time of the taking. Thus, the mere fact that the remaining property is still adaptable for its present use will not render the noncontiguous tract separate for purposes of severance damage. *See,* Annot., 6 *A. L. R.* 2d 1197, 1203 (1949); *Cole Investment Co. v. United States,* 258 *F.* 2d 203, 204–205 (9 Cir. 1958). The partial taking of a manufacturing or industrial plant consisting of an aggregate of separate properties actively serving a common purpose has consistently been regarded as the type of taking supporting a claim for severance damage. 27 *Am. Jur.* 2d, *Eminent Domain,* § 316 at 137–138. Although business losses or diminished profits may sometimes be part of the factual background relevant to establishing the loss in value, it is essential that the measure of severance damage be assessed only in terms of loss in fair market value of the property as a result of the taking. See *Baetjer v. United States, supra;* 143 *F.* 2d at 396; *City of Los Angeles v. Wolfe,* 6 *Cal.* 2d 326, 99 *Cal. Rptr.* 21, 28, 491 *P.* 2d 813, 820 (Sup. Ct. 1971).

We have, of course, given no consideration herein to the fixing of defendants' actual damages which will be a matter for determination at trial.

█ In order for the condemnee to recover severance damages for the taking of spatially separate but functionally integrated property, there must also exist a unity of ownership among all the physically discrete parcels. *See generally,* 27 *Am. Jur.* 2d, *Eminent Domain,* § 320 at 143; 29A *C. J. S. Eminent Domain* § 140 at 595; Annot. 95 *A. L. R.* 3d 887, 890 (1964); 4A *Nichols, Eminent Domain,* § 14.31(2) at

324

416–424. The question presented is whether strict unity of title in a given entity must exist, or whether ownership is a matter of substance rather than form so that identity of beneficial interest will suffice. This is a novel question in New Jersey. The courts of two of our neighboring states have come to opposite conclusions. In Pennsylvania the legal separateness of the landowners automatically precludes the recovery of severance damages. *Sams v. Redevelopment Authority*, 431 *Pa.* 240, 244 *A.* 2d 779 (Sup. Ct. 1968). In New York, on the other hand, ownership is seen as a matter of substance, and the real parties in interest are allowed to recover for such losses. *Erly Realty Development, Inc. v. State*, 43 *A. D.* 2d 301, 351 *N. Y. S.* 2d 457 (Sup. Ct., App. Div. 1974), *cert.* den., 34 *N. Y.* 2d 515, 357 *N. Y. S.* 2d 1025, 313 *N. E.* 2d 796 (Ct. App. 1974).

 This Court has been reluctant to pierce the corporate veil in order to allow a corporation to gain an economic advantage. *See, e. g., General Public Loan Corp. v. Director, Div. of Taxation,* 13 *N. J.* 393, 400, 401 (1953). However, the concept of eminent domain requires that the realities underlying corporate ownership of land be fairly recognized. Normal business considerations, including due regard for federal tax consequences, may indicate that a bifurcated ownership of the assets of a functionally integrated enterprise is more desirable than ownership by a single entity. The law should not require businessmen to ignore otherwise sensible economic planning decisions in order to retain their right to full actual damages consequent upon a public taking.

 In the present case, Davis White Corporation has a fee interest in most of the uncondemned parcel and a leasehold interest in that part of the parcel owned by the Norfolk partnership. In addition, Davis White owns a leasehold interest in the condemned parcel while Norfolk retains a fee interest. The partnership is composed of the same individuals who are also the only shareholders in the corporation. Each has a one-third interest in both the

partnership and the corporation. Any loss resulting from the condemnation of the warehouse-garage will be sustained by those three individuals. There is nothing illegal or contrary to public policy in holding title as a partnership to some of the assets of an enterprise while holding title as a corporation to other of its assets. Therefore, the fact that the condemned parcel was owned by Norfolk while most of the other parcel is owned by Davis White does not alter the unity of beneficial ownership of the whole and thus the true unity of loss. We therefore conclude that there is adequate unity of ownership for the purpose of recovering severance damage. *Uniform Eminent Domain Code*, § 1007 (Official Text 1974):

For the purpose of determining compensation under this Article, all parcels of real property, whether contiguous or noncontiguous, that are in *substantially* identical ownership . . . shall be treated as if the entire property constitutes a single parcel. [Emphasis supplied.]

*See State ex rel. Symms v. Nelson Sand and Gravel, Inc.,* 93 *Idaho* 574, 468 *P.* 2d 306 (Sup. Ct. 1970). *But cf., Herr v. Bd. of Education,* 82 *N. J. L.* 610 (E. & A. 1912).

Based on the foregoing considerations, we hold that a condemnee may offer evidence of severance damage resulting from the taking of a noncontiguous parcel provided that he has demonstrated (1) that the two parcels are functionally integrated; that each is reasonably necessary to the use and enjoyment of the other (unity of use); and (2) that he substantially owns both parcels (unity of ownership).

We are also called upon to determine if *N. J. S. A.* 20:3–13(b)[2] requires the condemning authority to proceed first at a trial *de novo* regardless of which party files the no-

---

[2]*N. J. S. A.* 20:3–13(b):

The hearing on appeal shall be a trial *de novo*, as in other actions at law, without a jury, unless a jury be demanded. The award of the commissioners shall not be admitted in evidence.

tice of appeal from the condemnation commissioners' award. We conclude that the statute requires the condemnor to proceed first.

A trial *de novo* means, "trying the matter anew, the same as if it had not been heard before and as if no decision had been previously rendered." *Farmingdale Supermarket, Inc. v. United States,* 336 *F. Supp.* 534, 536 (D. *N. J.* 1971). *See generally,* 2 *Am. Jur.* 2d, *Administrative Law,* § 698 at 597–599. Moreover, because *N. J. S. A.* 20: 3–13(b) requires that the award of the commissioners not be admitted into evidence, it is clear that the legislative intent is to have the trial *de novo* conducted as if there had never been an administrative proceeding. Therefore, the party proceeding first on the administrative level has the same requirement at the trial *de novo. N. J. S. A.* 20:3–12(e)[3] specifies that the condemnor must proceed first at the administrative hearing. We therefore conclude that the condemnor must also proceed first at the trial *de novo.* To the extent that *Ringwood Co. v. North Jersey Dist. Water Supply Comm'n,* 105 *N. J. L.* 165 (E. & A. 1928) and *Port of N. Y. Authority v. Howell,* 68 *N. J. Super.* 559 (App. *Div.* 1961) are inconsistent with this opinion, they are overruled.

The judgment of the Appellate Division is reversed and the cause remanded to the trial court for further proceedings consistent with this opinion.

*For reversal and remandment*—Chief Justice HUGHES, Justices MOUNTAIN, SULLIVAN, PASHMAN, CLIFFORD and SCHREIBER, and Judge CONFORD—7.

*For affirmance*—None.

---

[3]*N. J. S. A.* 20 :13–12(e) :

At the hearing, the condemnor shall proceed first to offer proof of the nature and extent of the taking and its opinion of the compensation payable by reason thereof.