TOWNSHIP OF MANALAPAN, A MUNICIPAL CORPORATION OF THE COUNTY OF MONMOUTH, STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. JOHN J. GENOVESE AND JUDITH GENOVESE, HIS WIFE, CENTRAL JERSEY BANK & TRUST CO., DEFENDANTS, EMIL WUEST AND GERTRUDE WUEST, HIS WIFE, AND ED & Y REALTY CO., INC., A NEW JERSEY CORPORATION, DEFENDANTS-APPELLANTS.

Superior Court of New Jersey
Appellate Division

Argued November 1, 1982—Decided January 12, 1983.

Before Judges KING and McELROY.

*William H. Burns, Jr.*, argued the cause for appellants (*Pearce, Maguire, Burns, O'Brien & Van Note*, attorneys; *John R. Tassini*, on the brief).

*Charles R. Parker* argued the cause for respondent (*Sonnenblick, Parker & Selvers*, attorneys; *Gerald N. Sonnenblick*, of counsel).

The opinion of the court was delivered by

KING, J.A.D.

This is an appeal from a denial of severance damages in a condemnation proceeding. By summary judgment, Judge Shebell ruled against appellants. We conclude that he was correct. There were no material issues of fact; we decline appellants' invitation to innovate the law of condemnation. Appellants fail to persuade us that they conform to the requisites of unity of use and ownership required by Supreme Court precedent. *Newark Housing Auth. v. Norfolk Realty Co.*, 71 *N.J.* 314, 325 (1976).

These facts are pertinent. Appellant ED & Y Realty Co., Inc., a New Jersey corporation of which Emil Wuest was president and in which he and his wife were the sole stockholders, purchased property on October 22, 1970 between State Highway 9 on the west and Franklin Lane on the east in the Township of

Manalapan, from the Genoveses and Ace General Store, Inc. The parcel included a shopping center composed of nine retail stores and a commuter bus concession and depot, all facing Highway 9. Defendants leased some of the stores but operated the bus concession, a liquor store and a delicatessen themselves. The stores had adequate on-site parking. Defendants alleged that about 750 people commuted by bus from the site daily.

The Wuests, through their corporation, also contemporaneously leased from the Genoveses property known as Block 7, Lot 17B, located across Franklin Lane on the east. This lease was for ten years, commencing November 1, 1970 with options to renew for two five-year periods. The lot had been developed as a commuter parking lot for 150 vehicles and was later expanded to 400 spaces. The lease limited the use to a parking lot. The rent was $1 a month a car, about $4,800 a year from 1976 to 1980. From 1970 to 1976 the Wuests operated the leased premises as a commercial parking lot at full capacity.

Thereafter the Wuests subleased the lot to the township until September 1980 for a nominal rent, $1. During that period the Wuests continued to pay the Genoveses rent, $4,800 a year, but the township assumed the costs of all maintenance and repair, and collected the parking fees.

In May 1979 the township adopted a resolution to acquire Block 7, Lot 17B, along with two adjacent lots. Because of public objection, the township abandoned its attempts to acquire the adjacent lots. In February 1980 the township initiated condemnation proceedings to acquire Block 7, Lot 17B. In October 1980 defendants exercised their option to renew the lease with Genoveses.

Defendants claimed, as a long-term lessee of the condemned lot, that they were entitled to a share of the compensation paid by plaintiff. They also claimed that loss of control over the parking lot would diminish the rental value of their stores, causing compensable severance damages of $71,500.

On the motion for summary judgment the Wuests contended that because their leasehold represented a compensable interest,

this interest was sufficient to establish a unity of ownership. Further, they argued that the commuter parking lot was utilized by riders commuting by bus from their depot and that their willingness to lease the lot to the township for only $1 while paying rent of $4,800 and collecting no parking fees showed that they derived considerable benefit from the lot.

In response, the township argued that a leasehold interest was not equivalent to ownership and that individuals using the parking lot may have patronized the shopping center "by happenstance," but that the lot was not provided specifically for customer use. Plaintiff also argued that even if defendants did initially use the lot for customer parking, that use ended when the township subleased the lot.

Judge Shebell ruled for the township, finding no unity of use or ownership sufficient to satisfy existing law. All other claims arising out of the condemnation of the lot were settled for $80,000, including the Wuests' claims for compensation consequent upon the taking of their long-term leasehold interest. *See N.J. Highway Auth. v. J & F Holding Co.*, 40 *N.J.Super.* 309, 314–316 (App.Div.1956).

The parties disputed only the ultimate issues of unity of ownership and unity of use. No genuine issues of material fact were present. Both parties agreed that the Wuests were long-term lessees of the condemned parcel and that they sublet to the township before condemnation. Both agreed that the parcel was a commuter parking lot and that drivers who used it also patronized the Wuests' stores. The township disputes whether the use was sufficient to establish the economic integration of the parcels.

■ Both our federal and state constitutions require just compensation for public use of private property. *U.S. Const.*, Amend. XIV, § 1; *N.J. Const.* (1947), Art. I, par. 20. When a condemnor takes any portion of an owner's property, the owner must be compensated not only for the value of the land taken but also for diminution in value of the remaining land attributable to the severance. *Ridgewood v. Sreel Inv. Corp.*, 28 *N.J.* 121,

125 (1958). See *N.J.S.A.* 20:3–29. But to recover severance damages, an owner must prove either that the parcels were contiguous or that they were constituent parts of one economic unit. *N.J. Turnpike Auth. v. O'Neill,* 133 *N.J.Super.* 445, 449 (App.Div.), certif. den. 68 *N.J.* 482 (1975). *See Norfolk Realty, supra,* 71 *N.J.* at 321.

■ The Wuests assert that the condemned lot and the shopping center lot should be considered contiguous because of the presumption that an abutting owner owns property to the center of the road. Both parcels abut Franklin Lane on opposite sides. Defendants rely in this regard on *Norfolk Realty, supra,* at 322, n. 1 which mentions such a presumption. In that case, however, the court did not rely on any presumption but considered two lots abutting opposite sides of the highway to be noncontiguous. *Id.* at 323. Courts have not relied on this asserted presumption. Rather, they have held that an intervening space, such as a road between two lots, does not necessarily divide them if a common owner has a legal right to cross the space. 4A *Nichols, Eminent Domain,* § 14.31(1) at 403–409 (1980). To consider such lots contiguous, common ownership is essential. *Id.* at § 14.31(2) at 424–426. Diverse ownership could suffice, but only where the lots are used by agreement in common. *Ibid.* Thus, lots separated by a road might be considered contiguous in a case like *Norfolk Realty* where true common ownership was present.

■ Severance damages may also be recovered even though the condemned property is physically separate from the remaining property. But then a landowner must show that unity of use and unity of ownership exist between the separate lots. *Norfolk Realty, supra* at 325.

■ To establish unity of use the landowner must show that the lots were constituent parts of a single economic unit. *Id.* at 322. Functional integration of the lots at the time of the taking is required. *Id.* at 323, 325.

There must be such a connection or relation of adaptation, convenience and actual and permanent use as to make the enjoyment of one reasonably necessary to the enjoyment of the other, in the most advantageous manner in the business for which it is used. [*Nichols, supra,* § 14.31(1) at 399; citations omitted.]

The Wuests argue that the simultaneous acquisition of the shopping center (October 22, 1970) and the leasehold (November 1, 1970), the use of the parking lot by patrons of the bus concession, and the Wuests' willingness to honor the lease while the township collected all parking fees, demonstrate a functional integration of the lots.

■ Our case law is not ample on the subject and the issue is fairly debatable in this case. In *Ridgewood, supra* 28 *N.J.* at 129, the court ordered a new trial where the trial judge had ruled that no functional relationship existed between a shopping center and a parking area to the rear of the stores. The shopping center property was 150 feet deep and the building housing the stores in the front of the property ranged from 50 to 70 feet deep. Each store had a rear door and cellar accessible only by a 14-foot alley to the rear. The parcel's owner leased parking space in the rear of the lot on a monthly basis and reserved space for each store free of charge. *Id.* at 123–125. The municipality condemned the rear 70 feet of the lot, including the alley used for access. An expert witness testified that the impossibility of expanding the building, the difficulty of making deliveries in the rear, and the loss of his tenants' privileges, would diminish the value of the uncondemned property. The Supreme Court held that this testimony created a jury question on the issue of disruption of unity of use and consequent severance damage. *Id.* at 124–126, 129.

In *State v. Bakers Basin Realty Co.,* 138 *N.J.Super.* 33, 42–43 (App.Div.1975), aff'd 74 *N.J.* 103 (1977), where contracts for the sale of three parcels from three landowners to a developer clearly showed the intent to use them as a single tract for a shopping center, the properties were considered integrated. Similarly, in *Norfolk Realty, supra,* 71 *N.J.* at 320–321, landowners modernized their meat-processing plant and built a warehouse with special wiring and power equipment for refrigerated trucks across the street from the plant. Trucks packed with processed meat from the plant were stored overnight in the

warehouse. Adopting the Appellate Division's characterization of the warehouse as a "highly specialized and single purpose structure known in the trade as unique," the court held that the two lots were functionally integrated. *Id.* at 320, 325.

Defendants' allegations here are not sufficient to show a unity of use as described in the above cases. The lease agreement contains no reference to the contemporaneous purchase of the shopping center lot or to any integration of the two lots. The record does not show whether other parking is readily available or whether this parking facility is necessary to defendants' bus concession. Finally, defendants' willingness to continue to rent the parking lot from the Genoveses while subletting to plaintiff for $.25 a year does not support their contention of substantial economic integration and interdependence. The act of subleasing rather tends to diminish defendants' contention of an "actual and permanent" use required for integration. Indeed, defendants divested themselves of some of the control which they now claim plaintiff has usurped. This subletting of the lot belies the assertion of economic unity. Meanwhile, the parking lot use remains unchanged and may continue unchanged indefinitely.

Even assuming that the Wuests did establish a unity of use, they did not establish unity of ownership. They assert that their leasehold interest in the condemned lot, which is a compensable interest, *N.J. Highway Auth. v. J. & F. Holding Co., supra* 40 *N.J.Super.* at 316, suffices. New Jersey has adopted a generous interpretation of unity of ownership which includes the concept of beneficial ownership. *Norfolk Realty, supra* 71 *N.J.* at 324–325. See Payne, "A Survey of New Jersey Eminent Domain Law," 30 *Rutg.L.Rev.* 1111, 1180 (1977). In *Norfolk Realty* the court pierced the corporate veil to hold that the three shareholders of a corporation owning the processing plant, who were also owners of the condemned warehouse, were beneficial owners of the plant 71 *N.J.* at 324–325.

But a distinction must be drawn between the beneficial ownership found sufficient in *Norfolk Realty* and the leasehold

interest of the Wuests here. The Genoveses were the beneficial and legal owners of the parking lot; they received the monthly rental and held the fee. In *Bakers Basin, supra,* 138 *N.J.Super.* at 44, we held that a developer who owned three lots and had long-term leasehold interests in two adjacent lots could not claim unity of ownership in the leased lots. *Norfolk Realty* did not modify that holding. Here defendants did not establish any unity of ownership under existing law. We are not persuaded to extend the right to recover severance damages to a tenant with an option to renew for two five-year periods and find no warrant in *Norfolk Realty* to do so.

Affirmed.