**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0753-15T1

TOWNSHIP OF MONTCLAIR,

    Plaintiff-Respondent,

v.

FRANK CERINO, MARY ANN CERINO,
DECOZEN CHRYSLER JEEP DODGE,

    Defendants-Appellants,

and

NEW YORK COMMUNITY BANK,

    Defendant.

_____

Argued April 26, 2017 — Decided May 9, 2017

Before Judges Fuentes, Carroll and Farrington.

On appeal from the Superior Court of New
Jersey, Law Division, Essex County, Docket No.
L-4479-15.

John J. Reilly argued the cause for appellants
(Greenbaum, Rowe, Smith & Davis LLP,
attorneys; Mr. Reilly, on the briefs).

Jennifer Borek argued the cause for respondent
(Genova Burns LLC, attorneys; Ms. Borek, of
counsel and on the brief; Michael C. McQueeny,
on the brief).

PER CURIAM

This appeal involves the condemnation of Block 2209, Lots 1 and 16 (the subject property), also known as 59-61 Valley Road in the Township of Montclair (Township). The subject property is owned by defendants Frank and Mary Ann Cerino, and is presently used to store automobiles. Defendants own two automobile dealerships in the area: (1) 225 Bloomfield Avenue, Verona (the Verona property), which operates as DeCozen Chrysler Jeep Dodge; and (2) 665-679 Bloomfield Avenue, Montclair (the Montclair property), which operates as Montclair Motor Car.

The Law Division entered an order appointing commissioners for the condemnation hearing, thereby authorizing them to examine and appraise the subject property and determine compensation for the taking. The order further authorized the commissioners to determine whether the subject property is functionally integrated with the Verona and Montclair properties, and the amount of severance damages, if any, to which defendants are entitled. The order also denied defendants' motion to dismiss the condemnation complaint for, among other things, failure by the Township to engage in bona fide negotiations pursuant to N.J.S.A. 20:3-6.

On appeal, defendants renew their argument that the Township failed to engage in jurisdictionally required bona fide negotiations prior to filing the complaint. They also contend the

2                                                          A-0753-15T1

trial court erred in ruling that only the Verona property, and not the Montclair property, is so functionally integrated with the subject property as to form constituent parts of a single economic unit, and that re-litigation of this issue is barred by the doctrine of collateral estoppel. For the reasons that follow, we affirm.

I.

The subject property contains approximately 9508 square feet and is improved with gravel and stone and enclosed by a chain link fence. Defendants contemporaneously purchased the subject property and the Montclair property in 1987, and financed the acquisition with a mortgage that secured both properties.[1] The subject property was used to store and display vehicles in conjunction with the Montclair property, which initially housed defendants' DeCozen Chrysler dealership.

Defendants purchased the Verona property in 2003, and moved the DeCozen automobile dealership there in 2007 due to the age and condition of the Montclair property. Since that time, DeCozen has used the subject property for the storage and display of a portion

---

[1] In his February 25, 2014 certification, defendant Frank Cerino represented that this debt has since been satisfied and there is presently no mortgage encumbering the title of either property.

of its automobile inventory, since the Verona property lacks sufficient area to fully accommodate its inventory of vehicles.

After moving the DeCozen dealership to Verona, defendants renovated the showroom on the Montclair property over time as their financial circumstances allowed. In December 2012, the Montclair Zoning Board of Adjustment ruled defendants had not abandoned the use of the Montclair property for the sale of new and used vehicles. That same month, the Township issued a business license to defendants for the sale of new and used cars. In January 2014, defendants reopened the showroom on the Montclair property for the sale of pre-owned luxury automobiles under the business name Montclair Motor Car.

The subject property adjoins the Township's municipal facility. On August 12, 2013, the Township adopted Ordinance O-13-44 (the Ordinance), which authorized it to acquire the subject property "for public purposes, principally but not limited to the provision of necessary additional parking facilities for the Montclair Police Department and Municipal Court Building[.]" The Ordinance recited that an independent appraisal prepared by Hendricks Appraisal Company LLC valued the subject property at $475,000. It also authorized the institution of eminent domain proceedings to acquire the subject property in the event good faith negotiations with defendants proved unsuccessful.

4

By letter dated March 25, 2013, the Township offered to purchase the subject property for $475,000. Defendants, through counsel, rejected the offer on April 9, 2013. Among other reasons, defendants maintained that "the Township's proposed taking of the [p]roperty constitutes a partial taking, which results in severance damages to [defendants'] car dealership propert[ies] in Verona and Montclair which are functionally integrated with the use of the [p]roperty which the Township proposes to take." Consequently, defendants asserted that the Township's offer was not a bona fide offer because it did not consider or include such severance damages. On May 3, 2013, the Township Attorney responded "[i]t is the Township's position that the property is not functionally integrated [with the Verona property] so as to generate severance damages." Also, "[i]n light of the fact that the former Montclair dealership has been and is vacant and unused for several years, [the Township] did not consider that [Montclair] property as having any impact on the value of the noncontiguous [subject property]."

On December 30, 2013, the Township filed a complaint and order to show cause seeking to acquire the subject property through eminent domain (the prior action). Following oral argument, Judge Patricia K. Costello dismissed the complaint without prejudice on April 8, 2014. She noted the Township's initial offer did not

include severance damages in the valuation. The judge found that the subject property and defendants' auto dealerships "are functionally integrated." She reasoned:

> Despite the congruence of defendants' facts with the Township's own description of the [subject property], the Township maintains that the [subject property] is not integrated with the dealerships. Yet to support their argument, the Township provides no reasoning in either their papers or their appraisal report. Instead, the Township presents only their conclusion that the [subject property] is not functionally integrated. Without any contrary facts or analysis, it is clear that the [subject property] is used in conjunction with the defendants' dealerships as the [subject property] is used to store defendants' excess automobile inventory. This court finds defendants have demonstrated a clear integration between the [subject property] and the car dealerships.

Judge Costello further found that "[t]he Township had the opportunity to, but did not substantially revise their appraisal to address the severance damage claims." As a result, the judge concluded the Township had failed to engage in bona fide pre-condemnation negotiations with defendants, as required by N.J.S.A. 20:3-6, and dismissed the complaint without prejudice.

The Township's appraiser conducted exterior inspections of all three properties on April 25, 2014, and November 3, 2014. Frank Cerino was present during the April inspection but not the November inspection. On December 5, 2014, the Township obtained

a revised appraisal report that took into account the integration and severance damage claims raised by defendants in the prior action. It expressly noted:

> This appraisal super[s]edes and replaces a previous report prepared by this office and dated January 30, 2013. That appraisal report involved and addressed only the proposed acquisition parcel — 59-61 Valley Road, Montclair. As previously discussed, the recent decision by the Honorable Patricia K. Costello, A.J.S.C., directed that all three properties be combined and valued as a single economic unit which has been reflected and addressed in this appraisal.

The Township's appraiser determined that the subject property and the Verona property were functionally integrated, but the Montclair property was not. The report elaborated:

> This appraisal has been prepared . . . in response to a recent decision by the Honorable Patricia K. Costello, A.J.S.C. In the decision, the [c]ourt notes, that based on statements by the property owner, both his Verona car dealership and his Montclair dealership were "functionally integrated" with the proposed . . . acquisition parcel. Based on my observations during the physical inspections of all three properties, it is readily apparent that the Verona Dealership property and [the subject property] are functionally integrated as the [subject property] is fully occupied by new cars from the DeCozen dealership. In addition, signage on the site identifies its use and occupancy as a storage yard for DeCozen Chrysler-Jeep-Dodge. Although [the Montclair Property] may offer the sale of some new automobiles for the Verona Dealership, it is primarily a used car facility which has no service department or

7

capabilities. Furthermore, there is no direct brand affiliation between Chrysler-Jeep-Dodge and the Montclair dealership facility. In other words, the Montclair building is not a licensed franchise or dealership for any automotive brand.

The updated appraisal further concluded that no severance damages were warranted with respect to the Verona property:

> The appraiser is of the opinion that other than the Market Value conveyed for the proposed partial acquisition noted herein, no severance damages to the remainder were indicated. As previously reported, both properties are non-contiguous (being approximately one mile apart). The property owner has stated that as a requirement of his dealership franchise agreement with Chrysler, he is required to maintain a new car inventory of approximately 250 vehicles and that due to municipal zoning ordinances, only 200 vehicles can be stored on site. (This excludes the approximately thirty-six (36) vehicles on display within the enclosed showroom area). Therefore, the remaining 50 vehicles are stored at [the Montclair property]. The Verona dealership has a non-delineated capacity for 205 vehicles along the exterior of the building. As indicated above, an additional thirty-six (36) vehicles are on display within the showroom. The property owner has also reported that a separate parcel located to the rear of 141 Bloomfield Avenue, Verona is being leased at an annual cost of $48,000.00 for the storage of 60 to 70 vehicles.

> The appraisal has presented a Market Value estimate of all three of the subject properties as a combined single economic unit. In addition, a valuation of the Verona dealership and the Montclair building following the acquisition of the [property]

8

> was also presented. The difference between the before and after valuations represents the Market Value of the proposed acquisition, including damages to the remainder, if any.

The appraiser concluded that, as of November 3, 2014, the fair market value of the Property was $470,000.

On February 3, 2015, the Township again offered to purchase the subject property for $475,000, accompanied by the updated appraisal. Defendants did not respond, and the Township sent them a second letter on April 1, 2015. On April 30, 2015, defendants rejected the offer. The rejection letter contended that: the Township's offer was not a basis for bona fide negotiations; the Township did not value the property as required by the court in the prior action; and the Township's conclusion that the partial taking does not cause severance damages was misinformed and legally deficient. Defendants took issue with the appraiser's position that the subject property and the Montclair property are not functionally integrated. They also contended the appraiser erred in: basing the denial of the award of severance damages on the fact that the property and the Verona property are non-contiguous; failing to account for the storage of used vehicles in determining the storage capacity of the Verona property; and referencing a month-to-month lease at 141 Bloomfield Avenue, Verona, which defendants had since terminated. Defendants' rejection letter,

however, did not provide a counteroffer.  It also requested that "the Township <u>not</u> [] take their property."

On May 1, 2015, the Township attorney responded that he would "review" defendants' rejection letter and "respond" to it. Instead, on June 25, 2015, the Township filed a new complaint and order to show cause again seeking to condemn and acquire the subject property.  The matter was assigned to Judge Dennis F. Carey, III, who conducted oral argument on August 20, 2015. Defendants asserted that the doctrine of collateral estoppel precluded re-litigation of Judge Costello's determination in the prior action that the three properties were functionally integrated.  Judge Carey rejected this argument, stating:

> Addressing the issue of Judge Costello's April [8], 2014 opinion . . . [s]he says, ["]The [c]ourt must therefore determine whether the defendant dealership and the taking parcel are functionally integrated.  I [find] that they are.["]  I do not believe that I am bound by that in terms of collateral estoppel.  I think that . . . when that statement is taken in context, it's clear that that was [] a factor in that . . . she had no choice    . . . .  [T]he appraisal, at that point, had never [analyzed] the issue one way or the other, so it was really uncontested.
>
> And I [] don't think she intended to close the door on that issue since . . . she didn't have . . . a finding by an appraisal one way or the other.
>
> So I don't think that the [] fact that the new appraisal that is subject to this

case, defines that the Verona property is functionally integrated, and the Montclair [] property is not, again, would defeat the application for eminent domain."

The court found the Township satisfied its statutory duty to conduct bona fide negotiations, reasoning:

> So, the [] issue is . . . the fact that the plaintiff, [T]ownship, did not provide another offer in response to the April 30[], 2015 letter. Does that in [e]ffect mean that the [T]ownship failed in [its] obligation to conduct [bona fide] negotiations? I don't think that they did. I think that [] when one looks at this case as a whole, clearly there [were] [bona fide] negotiations.
>
> There was a history between the parties of trying to resolve the issue of the taking and [] then the [T]ownship had made it pretty clear that . . . the new appraisal found that the Verona property was [] functionally integrated with the property subject to the taking, although the appraisal did not contemplate that there would be any compensatory damages from that finding.
>
> And that [] may or may not end up being the case. . . . The [T]ownship had made it clear that . . . they did not believe that the Montclair property . . . was functionally integrated, and therefore, that was going to be their position. Period. And that they [analyzed] both things.
>
> . . . .
>
> The [defendants] didn't make a counter offer. And that's the way negotiations normally work. . . . [Defendants] just pointed out why they were rejecting the offer, or what they found [were] the flaws in [] the analysis by the new appraisal, which may or

may not have merit. And -- but that doesn't really translate into the basis for -- a dollar and cents negotiation and it basically comes down to money.

. . . .

I can understand . . . that at that point there really was no point [to respond to defendants' rejection letter], and I don't think that [the Township's] lack of response to the April 30[] letter disqualifies them under [] their obligation to conduct [bona fide] negotiations.

The trial court memorialized its decision in a September 8, 2015 order. The court appointed three disinterested commissioners and instructed them to "examine and appraise the land and improvements set forth in the [c]omplaint taken by [the Township] for public purposes as stated therein and to fix and determine the compensation to be paid by [the Township] in accordance with law, including a determination as to integration as disputed between [the Township] and [d]efendants and the amount of severance damages, if any[.]" This appeal followed.

II.

We begin our analysis by recognizing the fundamental precept that

[t]he right to "just compensation" when the government takes property for a public use is one of the essential guarantees of both the United States and New Jersey Constitutions. U.S. Const. amend. V ("[N]or shall private property be taken for public use, without just

12

compensation."); N.J. Const. art. I, ¶ 20 ("Private property shall not be taken for public use without just compensation."). This fundamental right is of ancient origin, preceding the founding of our Republic, and is found even in the text of the Magna Carta. Magna Carta ch. 28 (1215), reprinted in The Anglo—American Legal Heritage 84 (Daniel R. Coquilette, 2d ed. 2004) ("No constable or other bailiff of ours shall take grain or other chattels of anyone without immediate payment therefor in money. . . .").

[Borough of Saddle River v. 66 E. Allendale, LLC, 216 N.J. 115, 136 (2013) (quoting Borough of Harvey Cedars v. Karan, 214 N.J. 384, 402 (2013)).]

The Eminent Domain Act (Act), N.J.S.A. 20:3-1 to -50, sets forth procedures to implement the constitutional requirements governing the taking of private property for government's use. Borough of Saddle River, supra, 216 N.J. at 136. N.J.S.A. 20:3-6 provides that before filing a complaint seeking authority to take property by eminent domain, a plaintiff must engage in "bona fide negotiations with the prospective condemnee[.]" The taking agency must first conduct an appraisal of the property, allowing the owner the opportunity to be present at the inspection. Ibid. Then, it must send an offer in writing, which includes "the property and interest therein to be acquired, the compensation offered to be paid and a reasonable disclosure of the manner in which the amount of [the condemnor's] offered compensation has been calculated[.]" Ibid. When the condemnor fails to engage in

bona fide negotiations, the complaint must be dismissed.  <u>Morris Cty. v. 8 Court St., Ltd.</u>, 223 <u>N.J. Super.</u> 35, 37 (App. Div.), <u>certif. denied</u>, 111 <u>N.J.</u> 572 (1988).

Our Supreme Court has held that the "reasonableness of pre-negotiation disclosures centers on the adequacy of the appraisal information; it must permit a reasonable, average property owner to conduct informed and intelligent negotiations [and] an appraisal should contain an explanation of the valuation approach or methodology actually used."  <u>State, by Comm'r of Transp. v. Carroll</u>, 123 <u>N.J.</u> 308, 321 (1991).  In <u>Carroll</u>, the Court found the State had complied with the pre-litigation requirements under <u>N.J.S.A.</u> 20:3-6, and set forth the minimally required information to be provided to the condemnee.  It held: "The appraisal's description of the valuation method, its inclusion of 'comparable' sales, and its specific rejection of other valuation methods, i.e., the income and cost approaches, imparted minimally sufficient information to the property owner."  <u>Ibid.</u>

<u>N.J.S.A.</u> 20:3-29 directs that the "condemnee shall be entitled to compensation for the property, and damages, if any, to any remaining property[.]"  If prior to the taking two or more parcels are functionally united, so that each is "reasonably necessary to the use and enjoyment of the other," the taking of less than the combined whole of the properties is a partial taking,

14

entitling the condemnee to severance damages with respect to the remaining related property. <u>Hous. Auth. of Newark v. Norfolk Realty Co.</u>, 71 <u>N.J.</u> 314, 325 (1976). Under such circumstances, the appraiser must consider the value of that portion to the whole and not just the part that is the subject of the taking. "It is necessary to assign a value not only to the property actually taken, but also to the property that is left" when calculating just compensation. <u>State, by Comm'r of Trans. v. Silver</u>, 92 <u>N.J.</u> 507, 515 (1983). However, "[i]n order to obtain severance damages, the landowner must show that the remaining parcel and the parcel which has been taken were constituent parts of a single economic unit." <u>Hous. Auth. of Newark</u>, <u>supra</u>, 71 <u>N.J.</u> at 322.

The Court has clearly defined severance damages:

> Severance damage in condemnation cases can occur only when there is a partial taking of another parcel of property. The traditional measure of damages for such a taking may be stated as either (1) the value of the property actually taken together with the diminution in value of the part that remains (severance damage) or (2) the difference between the value of the entire property before the taking and the value of the remainder after the taking.
>
> The mere fact that the condemned parcel is physically separated from the remaining parcel does not foreclose a condemnee from recovering severance damages.
>
> [<u>Hous. Auth. of Newark</u>, <u>supra</u>, 71 <u>N.J.</u> at 321 (citations omitted).]

A-0753-15T1

Here, the focus of defendants' argument is their disagreement with the conclusions reached by the Township's appraiser that the subject property and the Montclair property are not functionally united, and that the Verona property will not suffer severance damages as a result of the taking of the subject property. We do not find defendants' contentions persuasive.

We conclude the Township followed the proper procedure under N.J.S.A. 20:3-6, tendered a reasonable offer based on its appraiser's findings, and provided all necessary information to defendants including the methodology used to value the subject property. The appraisal met the standards set forth in the law, in that it explained its method of valuation and specifically considered and rejected defendants' position that the subject property formed a unity of use with the Montclair property, and that the Verona property will sustain severance or consequential damages from the taking of the subject property.

Contrary to defendants' contention, any disagreement between the parties regarding the method of valuation and the resulting damages is an issue for the commissioners, and is not a valid basis to deny the entry of a judgment for condemnation. In reaching this conclusion, we draw guidance from the Court's holding in Hous. Auth. of Newark, supra, 71 N.J. at 325, that

> a condemnee may offer evidence of severance damage resulting from the taking of a noncontiguous parcel provided that he has demonstrated (1) that the two parcels are functionally integrated; that each is reasonably necessary to the use and enjoyment of the other (unity of use); and (2) that he substantially owns both parcels (unity of ownership).

Here, there is no dispute over the actual, physical property the Township seeks to condemn. Rather, the dispute concerns the valuation of the subject property and the extent of any damages thereby resulting to defendants' Verona and Montclair properties. Judge Carey aptly preserved defendants' right to offer evidence of severance damages by expressly authorizing the commissioners to make "a determination as to integration as disputed between [the Township] and [d]efendants and the amount of severance damages, if any[.]"

Contrary to defendants' argument, Judge Costello's findings in the prior action regarding integration of the three properties did not preclude the subsequent re-litigation of that issue. The doctrine of collateral estoppel "bars relitigation of any issue which was actually determined in a prior action, generally between the same parties, involving a different claim or cause of action." Ziegelheim v. Apollo, 128 N.J. 250, 265 (1992) (quoting State v. Gonzalez, 75 N.J. 181, 186 (1977)). The purpose of the doctrine is to avoid re-litigating issues that have been fully and fairly

17

litigated and determined in an earlier proceeding. <u>First Union Nat'l Bank v. Penn Salem Marina, Inc.</u>, 190 <u>N.J.</u> 342, 352 (2007); <u>Lopez v. Patel</u>, 407 <u>N.J. Super.</u> 79, 93 (App. Div. 2009). Collateral estoppel is an equitable remedy, and the decision of whether to apply it in a particular case is left to the trial court's discretion after the court "weigh[s] economy against fairness." <u>Barker v. Brinegar</u>, 346 <u>N.J. Super.</u> 558, 566 (App. Div. 2002).

To successfully assert the bar of collateral estoppel, a party must establish the following factors:

> (1) the issue to be precluded is identical to the issue decided in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the court in the prior proceeding issued a final judgment on the merits; (4) the determination of the issue was essential to the prior judgment; and (5) the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding.
>
> [<u>First Union Nat'l Bank</u>, <u>supra</u>, 190 <u>N.J.</u> at 352 (citations omitted).]

Collateral estoppel is limited to issues actually litigated and decided in a prior action. <u>Ibid.</u> "[W]hen the five elements of collateral estoppel . . . are not satisfied, the inquiry ends." <u>Perez v. Rent-A-Center, Inc.</u>, 186 <u>N.J.</u> 188, 199 (2006) (internal citation omitted).

Applying these principles, we conclude that the issue of whether the subject property and the Verona and Montclair properties are so functionally integrated as to form a single economic unit was not fully and fairly litigated in the prior action. In dismissing that action, without prejudice, Judge Costello expressly noted that the Township had completely failed to address the issue of severance damages or state why they were not applicable. In contrast, the issues of integration and severance damages were squarely addressed in the Township's updated valuation analysis that formed the basis of its February 3, 2015 and April 1, 2015 offers to purchase the subject property. Accordingly, we discern no abuse of discretion in Judge Carey's determination that the doctrine of collateral estoppel did not bar his consideration of these issues.

Finally, defendants' April 30, 2015 rejection of the Township's updated offer, coupled with their unwillingness to engage in additional, meaningful negotiations, triggered the Township's right to re-file its complaint. The Act specifically supports such a conclusion. It provides: "A rejection of said offer or failure to accept the same within the period fixed in the written offer . . . shall be conclusive proof of the inability of the condemnor to acquire the property or possession thereof through negotiations." N.J.S.A. 20:3-6. When a prospective condemnee

rejects a condemnor's offer, the obligation to continue negotiations in an effort to avoid litigation is effectively discharged. <u>Ibid.</u> Accordingly, we share the trial court's conclusion that the Township satisfied its statutory duty to conduct bona fide negotiations.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0753-15T1