262 N.J. Super. 401 (1993)
621 A.2d 68
WILLIAM C. KING, PLAINTIFF-APPELLANT,
v.
GERRY D. RYAN, FRANK A. VATALARE, JOHN KRZEMINSKI, INDIVIDUALLY, JOINTLY, SEVERALLY AND/OR IN THE ALTERNATIVE AND AS THEIR CAPACITY AS POLICE COMMITTEE OF THE BOROUGH OF SOUTH BOUND BROOK, BOROUGH COUNCIL OF THE BOROUGH OF SOUTH BOUND BROOK AND CHIEF RICHARD MIGNELLA, SOUTH BOUND BROOK POLICE DEPARTMENT, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued February 2, 1993.
Decided March 2, 1993.
*402 Before Judges PRESSLER, MUIR, Jr. and KESTIN.
Susan S. Rankin argued the cause for plaintiff-appellant (Donington, Karcher, Leroe, Salmond, Luongo, Ronan, & Connell, attorneys; Nicholas J. Stroumtsos, Jr., of counsel and on the brief).
William T. Cooper, III argued the cause for defendants-respondents (William T. Cooper, attorney).
The opinion of the court was delivered by PRESSLER, P.J.A.D.
This is a municipal police disciplinary matter. Plaintiff William C. King, a patrolman employed by the Borough of South Bound Brook, appeals from a judgment of the Law Division, *403 entered after a de novo proceeding pursuant to N.J.S.A. 40A:14-150 sustaining his removal from office by the borough's police committee on the ground of indictable misconduct. The municipal defendants appeal from that portion of the judgment awarding plaintiff back pay from the date of his suspension without pay until the date, some eight months later, when the police committee's decision was rendered. Having consolidated the two appeals, we now reverse the judgment insofar as it sustains plaintiff's removal from office and direct his reinstatement. We consequently dismiss the municipal appeal as moot.
We rest our decision on defendants' egregious violation of N.J.S.A. 40A:14-149, which requires the hearing on disciplinary charges against a suspended police officer to be held within 30 days after the service of a copy of the complaint upon him. Beyond that, we have grave doubts that the record of the hearing before the police committee supported its adjudication. We are also constrained to conclude that the Law Division failed to provide plaintiff with the required de novo hearing, applying rather the appellate substantial-evidence test to the police committee's action.
Explanation of our decision requires some detailed reference to the facts underlying the disciplinary charges. During the early evening of November 13, 1988, a few minutes after 7:00 p.m., plaintiff, then a relatively new officer with little more than a year's experience, heard a transmission on his patrol car radio reporting the theft of an automobile which its owner had left with its engine running while picking up a food order at a local restaurant. Recalling that parts of stolen cars had been found at a near location in an adjacent town, he drove to that location and spotted the stolen car at the curb in front of 19 Thomas Road within minutes after the report of the theft. Donald Golaszewski, who lived at that address, and his half-brother Robert Poltorak, who was then visiting there, were arrested within minutes after plaintiff's arrival, charged with receiving stolen goods, indicted and stood trial. The disciplinary *404 charges against plaintiff arose out of his grand jury and trial testimony against Golaszewski and Poltorak.
Plaintiff testified at both proceedings that when he first saw the stolen vehicle, he saw Poltorak exiting from the driver's side and Golaszewski exiting from the passenger side. Poltorak approached plaintiff, told him he was out of his jurisdiction, and used abusive language. Poltorak then followed Golaszewski into the house. Plaintiff then called for backup, and several officers arrived. Looking through the windows, the officers saw a group of young people in the house. Their knocking on the door was finally responded to by Poltorak, and he and Golaszewski were arrested. The arrest and the charges were based upon plaintiff's statement that he saw those two exit the stolen vehicle. It should be added that plaintiff knew Golaszewski. It appears that Golaszewski had dated plaintiff's girlfriend before plaintiff's relationship with her.
Plaintiff's testimony at Golaszewski's and Poltorak's criminal trial was entirely consistent with his grand jury testimony. After the State rested, the defense called a group of witnesses who gave a different version. None of these witnesses was, however, disinterested. This is the story they told. Poltorak, Golaszewski, and Golaszewski's girlfriend spent the afternoon at a local tavern, drinking beer for four hours and watching football. Their presence there was confirmed by the barmaid, a friend of Golaszewski's mother, who thought they had left between 7:00 and 7:30 p.m. It was the testimony of the three that when they left the bar in Poltorak's truck at about 7:00 p.m., they drove a casual acquaintance home, spent some time with him there, and then drove on to 19 Thomas Road. The acquaintance was not called as a defense witness. When the three arrived at the Thomas Road house, the story continues, Golaszewski and his girlfriend entered first. Poltorak, noticing plaintiff and his patrol car, stopped to speak to him. Poltorak's version of the conversation was not much different from plaintiff's. Poltorak then followed the others into the house. None of the three had noticed the stolen car.
*405 At the time Poltorak and Golaszewski and his girlfriend arrived at 19 Thomas Road, there were three other persons in the house: Keith Golaszewski, a younger brother, who also lived there, and two of his friends. Those three also testified to substantially the same events. According to them, just minutes before they had seen Poltorak, Golaszewski and Golaszewski's girlfriend arrive in the truck, a young man named William Brine, a friend or at least an acquaintance of the Golaszewski brothers, had come to the house, told Keith that he had a relative's car and did not know how to turn out the lights, and asked Keith to come out and do it for him. Keith did so and Brine entered the house. By the time Keith had accomplished this task and reentered the house to talk to Brine, Brine had already left via the back door. Brine, previously involved with car thefts, had been subpoenaed to testify at trial. He denied any knowledge of the stolen car and denied that he had been to 19 Thomas Road that day.
Following the testimony of the defense witnesses, given on May 17, 1989, the assistant prosecutor, who must not have known what the tenor of the defense would be, was extremely troubled by the contradiction of plaintiff's testimony by the two defendants and their four friends, who had all placed defendants in a different vehicle at the very time plaintiff asserted that he had seen them exiting the stolen vehicle. The assistant prosecutor reported the matter to his superiors who apparently formed the conclusion, presumably based on plaintiff's association with Golaszewski's former girlfriend, that it was plaintiff who had lied. The South Bound Brook police chief was advised of this "problem" the next morning, May 18, 1989, and plaintiff was then summoned to the prosecutor's office, where he was subjected to a continuous two hours or so of interrogation by an experienced detective lieutenant. There were no witnesses to the interrogation and no simultaneous record made. According to the testimony of both plaintiff and the interrogator given at the ensuing disciplinary hearing, plaintiff was upset and nervous. He was badgered and not permitted to leave the *406 interrogation room, and he finally admitted that he had a reasonable doubt as to whether the persons he had seen were in fact the two defendants in the criminal trial. Ultimately, the criminal charges against the two defendants were dismissed.
After the prosecutor's office had finished with him, plaintiff was handed over to his police chief, who interrogated him at police headquarters. The record suggests that much the same sort of interrogation took place. Although police regulations required a verbatim recording, none was made. The chief's subsequent explanation was that he had no access to a tape recorder. Another officer disputed this proposition at the disciplinary hearing, explaining that the tape recorder was always kept in an unlocked cabinet in the chief's office.
In any event, on May 19, 1989, the chief served written charges on plaintiff, advising that he was suspended with pay and accusing him of conduct punishable as a crime, namely, perjury as defined by N.J.S.A. 2C:28-1. The alleged perjury was his grand jury and trial testimony that he had seen the two defendants in the criminal trial exit the stolen vehicle. On May 31, 1989, plaintiff was advised in writing that his suspension status was changed, effective June 1, 1989, to a suspension without pay.
No hearing was scheduled on the charges until September 13, 1989. The hearing was adjourned until September 26. On September 26, the police chief unilaterally adjourned it again without date. The hearing finally took place in mid-January, 1990.
In explaining the eight-month delay, defendants assert that a hearing was not immediately scheduled because the local police chief was waiting for the county prosecutor's authorization to proceed. That authorization was forthcoming in early July 1989, when the county prosecutor wrote to the police chief, telling him that
I have determined that you may proceed with disciplinary charges against Patrolman William King as a result of his conduct in the matter of State v. *407 Golaszewski & Poltorak. We will hold in abeyance any possible criminal charges against Officer King pending the outcome of those disciplinary proceedings. Please advise me as to the final result of those proceedings and at that time we will make a determination as to whether the criminal charges will go forward.
I have assigned [an] Assistant Prosecutor ... to continue handling this matter and he will provide you with any assistance that you request.
Several weeks later, on July 19, 1989, the borough attorney wrote to plaintiff's attorney, advising him that "[t]he Borough is interested in proceeding with disciplinary charges against your client." The letter goes on to ask plaintiff's counsel to communicate with the borough attorney in order to discuss "a possible amicable solution" and so that "we may move forward with this matter." Finally, on August 17, the borough advised plaintiff that it had scheduled a closed hearing before the Mayor and Council for September 13, 1989. Up to this point, there is nothing in the record to suggest that plaintiff was in any way consulted, that he agreed to forego a disciplinary hearing pending disposition of "possible" criminal charges, or that he had in any other way waived his right to the statutory 30-day hearing. The borough appears to have been acting unilaterally throughout.
The hearing did not take place as scheduled on September 13 because plaintiff requested a public hearing and there was insufficient time following this request for public notice. The hearing was accordingly rescheduled for September 26. As noted, the police chief, on that day, again unilaterally, adjourned the hearing without date. His reason was that it had come to his attention that the borough might not have had insurance coverage for the variety of tort claims which Golaszewski and Poltorak were then asserting as a result of their arrest the previous November. That problem was apparently resolved in some way, and the hearing was scheduled for and took place starting on the evening of January 16, 1990, and continuing through the following two evenings.
All the trial witnesses, including plaintiff, testified at the disciplinary hearing in accordance with the tenor of their trial *408 testimony. In addition, one of the officers who had participated in the November arrest of Golaszewski and Poltorak testified that he had definitely seen Brine, who was well known to him, at the 19 Thomas Road address that night; this, despite Brine's testimony that he had not been at the house and the testimony of the six young people that he had come and gone before the police arrived.
There was testimony from another police officer, who had served a hearing subpoena on Brine. According to that officer, Brine had then told him he, Brine, "knew who stole the car, the two guys, but didn't want to get them into trouble." The officer further testified that he stapled a note reporting this conversation to the return of service of the subpoena and left it on the chief's desk. The note had been detached from the subpoena by the time of the hearing, but the staple marks were still evident. Finally, plaintiff's girlfriend evidently testified that on the night of the criminal defendants' arrest, she received a phone call from Keith telling her that his brothers were going to "frame" plaintiff.[1]
On January 24, 1990, the police committee rendered its decision, sustaining the charge of perjury. After making statutory reference to the crime of perjury and reciting the hearing dates and appearances, the balance of the document reads in full as follows:
It is the unanimous finding of this committee that the testimony and documents accepted into evidence sustain the charge against Officer King. It is found further that the appropriate penalty in this case is the removal of Officer King from the Police Department. It is therefore the decision of this committee that the disciplinary action of suspension imposed by Chief of Police, Richard Mignella is to be considered a dismissal effective 6/1/89.
Plaintiff's appeal to the Law Division pursuant to N.J.S.A. 40A:14-150, applicable to non-civil service municipalities, followed.
*409 We address first the timeliness issue. As we have noted, N.J.S.A. 40A:14-149 requires the hearing on local disciplinary charges to be commenced within thirty days after service of the charges on a suspended police officer. The statute provides in full as follows:
If any member or officer of the police department or force shall be suspended pending a hearing as a result of charges made against him, such hearing, except as otherwise provided by law, shall be commenced within 30 days from the date of the service of the copy of the complaint upon him, in default of which the charges shall be dismissed and said member or officer may be returned to duty.
The dismissal provision of N.J.S.A. 40A:14-149 is to be contrasted with N.J.S.A. 40A:14-147, which contains no such provision in the case of a police officer who is not suspended pending disposition of the charges and whose hearing takes place after the thirty-day period. See Matter of Frey, 160 N.J. Super. 140, 388 A.2d 1329 (App.Div. 1978), making clear the greater degree of latitude in the late scheduling of the hearing if the officer is not suspended pending disposition of the charges.
If the thirty-day period is calculated from the date of the original suspension, it would have expired on June 19, 1989. If calculated from the date of the suspension without pay, it would have expired on July 3, 1989. The first scheduling of the hearing was for September 13. While plaintiff's request for a public hearing was the cause of the adjournment from September 13 to September 26, there is nothing in the record to suggest that he was in any way responsible for or acquiesced in the delay either before or after this two-week period, a delay totaling some eight months.
In construing the predecessor statute, N.J.S.A. 40:47-8, which predated the codification of Title 40A, we recognized that the thirty-day provision, even in the case of a suspended officer, is not an absolute and inflexible requirement and consequently that the failure of strict compliance therewith is not fatal to the proceedings if "there has been a compliance with the spirit of the statute." Ressel v. Costello, 79 N.J. Super. 149, 153, 191 A.2d 64 (App.Div. 1963). We found compliance with the spirit of *410 the statute in cases in which the officer has waived the benefit of the thirty-day provision, in which he has requested or acquiesced in the delay, in which he has declined the option offered him of specifying the precise date within the permissible period on which he wants the hearing to take place, and for other good and reasonable cause "when circumstances so warrant." Ibid.
Since plaintiff himself cannot be charged with responsibility for more than two weeks of the total delay here, the question before us is whether there was good cause which would justify the borough's withholding of a hearing for the eight months during which plaintiff was suspended without pay. We are satisfied that there was not. The borough, as we understand its argument, offers two primary reasons for the delay. The first was its need to obtain the prosecutor's authorization, and the second was its concern over insurance coverage for the criminal defendants' tort claims. We find neither explanation to be adequate.
First, we are at a loss to understand how the entirely collateral insurance coverage issue could warrant what was nearly the four-month delay from September to January. The truth or not of the perjury charge against plaintiff, the borough's ability to prosecute that charge, and plaintiff's ability to defend himself against it could not, in our view, possibly have been affected by the tangential civil consequences of plaintiff's conduct. That conduct remained the same whether the borough was insured for those consequences or not.
We take the same view of the period from the May date of the charges to early July, while the borough was waiting for the prosecutor's go-ahead. As we see it, it was plaintiff's, not defendants', right to seek a delay of the disciplinary hearing until after disposition of pending criminal charges. Compare Ressel, 79 N.J. Super. at 153, 191 A.2d 64, noting that "when there is a pending indictment against the officer growing out of the same incident, a postponement of the departmental hearing *411 is frequently requested by the police officer charged and granted by the municipal officials to avoid prejudicing the officer at the criminal trial." Plaintiff, however, did not request the delay, the borough regarded itself as, in any event, bound by the prosecutor's decision, and in the end plaintiff was hardly advantaged by that delay in view of the prosecutor's expressed reservation of the right to initiate criminal proceedings after completion of the disciplinary proceedings. But even if the borough's decision to await the prosecutor's consent were to be regarded as good cause, the fact remains that that consent was received by the chief in early July, and the borough waited more than thirty days from that date even to communicate with plaintiff's attorney about fixing a hearing date. Finally, we see in this record no explanation at all for any of the other periods of delay.
We recognize that the flexibility with which the apparently mandatory statutory thirty-day provision of N.J.S.A. 40A:14-149 has been invested by the courts proceeds from the need to accommodate the prompt dispositional rights of the suspended officer with the public's overriding interest in an appropriate response to allegations of police misconduct. That flexibility is not, however, congruent with inexcusable and egregious disregard of the officer's rights. The eight-month delay in the circumstances here is beyond tolerability.
Beyond the timeliness issue, we have serious concerns respecting the substantive issues. To begin with, the trial judge, although noting his statutory obligation to afford plaintiff a de novo hearing, did not in fact do so but rather applied the appellate substantial-evidence review standard. Without analyzing the evidence adduced before the police committee and the brief supplemental testimony offered by the owner of the stolen car, and without making any findings of fact of his own, the judge basically concluded that "the record is consistent with the findings and conclusion of the Police Committee"  this despite the fact that there were no findings and conclusions of *412 the police committee at all beyond its pro forma statement that the charge had been proved. The judge also explained the basis of his action as follows:
The Court finds there is substantial evidence which supports the conclusion of the Police Committee that it [plaintiff's testimony regarding the exiting of the two criminal defendants] was all false. The record is consistent with the Police Committee's decision. The Court therefore declines to overturn the action of the Police Committee.
Obviously, there was no careful sifting and weighing of the evidence and independent findings of fact as are the hallmark of a de novo trial. There was instead only the application of the appellate review standard. See, e.g., Housing Auth. of Newark v. Norfolk Realty Co., 71 N.J. 314, 326, 364 A.2d 1052 (1976).
In weighing and sifting the record ourselves, as the trial judge was obliged to but did not do, we are unable to concur with the conclusionary statement of the police committee. We find it disturbing that there was no disinterested witness who contradicted plaintiff's sworn testimony. We find it disturbing that the assistant prosecutor who tried the criminal case was apparently taken by surprise by the testimony of the two defendants, supported by their friends and relatives. We find it disturbing that plaintiff's admission of coloring his testimony, made to the prosecutor's detective and to his police chief, was extracted after extensive unwitnessed, unrecorded interrogation made apparently with no offer of constitutional protection. We find it disturbing that the testimony of the other police officers given at the police committee hearing, which cast considerable shadow over the credibility of the prosecution line-up, was apparently disregarded.
In short, but for plaintiff's admissions to his superiors, there would be nothing untoward about the inconsistency between plaintiff's trial testimony and the version offered by a number of interested defense witnesses. That happens all the time. Clearly, it is not the number of witnesses swearing to the same story which makes the story true, and ordinarily it is the jury's *413 function, bypassed here, to determine where the truth lies. Moreover, the content of plaintiff's admissions, made in the circumstances here, cannot be regarded as dispositive of their truth. In our view, therefore, the charge of perjury on which the disciplinary proceedings were based was not proved.
The judgment appealed from sustaining the removal of plaintiff from his office is reversed, and we remand for entry of an order reinstating him to his position with back pay. The defendants' appeal from the back-pay provision of the order is dismissed as moot.
NOTES
[1] This testimony is referred to by others at the hearing; the transcript thereof was not supplied to us and is evidently not readily available.