794 A.2d 230

TRACE HERZOG, PLAINTIFF–APPELLANT, v. TOWNSHIP OF FAIRFIELD, DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Submitted February 25, 2002—Decided April 9, 2002.

Before Judges PETRELLA, KESTIN and STEINBERG.

*Schneider, Goldberger, Cohen, Finn, Solomon, Leder & Montalbano,* attorneys for appellant (*James M. Mets,* of counsel and on the brief).

*Piro, Zinna, Cifelli & Paris,* attorneys for respondent (*David M. Paris,* of counsel; *Casey Anne Cordes,* on the brief).

The opinion of the court was delivered by

KESTIN, J.A.D.

After plaintiff was demoted and terminated from his employment as a corporal in the Township of Fairfield Police Department, he sought *de novo* on the record review pursuant to *N.J.S.A.* 40A:14–150. The parties supplemented the record with additional testimony as permitted by the statute. Based upon the expanded record, the trial court upheld the demotion and termination. The court also denied plaintiff's renewed motion for pay and other employment benefits during the period of suspension. Plaintiff appeals. We affirm in part and reverse in part.

We have analyzed the record in the light of the arguments advanced by the parties and have determined that the trial court's findings and conclusions upholding the demotion and termination are supported by substantial credible evidence and should, therefore, not be disturbed. *See In re Phillips,* 117 *N.J.* 567, 579, 569 *A.*2d 807 (1990). We discern no material flaw in the trial court's proceedings, *see id.* at 578–79, 569 *A.*2d 807; *King v. Ryan,* 262 *N.J.Super.* 401, 412, 621 *A.*2d 68 (App.Div.), *certif. denied sub nom. King v. Borough of South Bound Brook,* 134 *N.J.* 474, 634 *A.*2d 522 (1993); *In re Bruni,* 166 *N.J.Super.* 284, 290, 399 *A.*2d 997 (App.Div.1979), and regard the issues plaintiff raises addressing particular rulings made by the trial court to be meritless. *See R.* 2:11–3(e)(1)(E). Accordingly, we affirm the demotion and

termination decisions substantially for the reasons stated on the record by Judge Caruso. He reflected on the progressive discipline rationale of *Town of West New York v. Bock,* 38 *N.J.* 500, 522–24, 186 *A.*2d 97 (1962), and properly concluded, considering plaintiff's employment record, not only that it had been applied here, but also that there were other reasons, as well, for ruling that demotion and termination were appropriate. *See Cosme v. Borough of East Newark.,* 304 *N.J.Super.* 191, 203–07, 698 *A.*2d 1287 (App.Div.1997), *certif. denied,* 156 *N.J.* 381, 718 *A.*2d 1210 (1998).

Our review discloses one error of law in the trial court's disposition, however. We refer to the provision in the judgment that plaintiff was not entitled to back pay (and other benefits of employment) for the period of his suspension, from September 15, 1998, to the date that action was confirmed after the required departmental hearing, January 20, 1999. The numerous charges against plaintiff emanated from his conduct in reading a confidential internal affairs document and disseminating it to a newspaper. After he was suspended without pay, plaintiff moved, citing *N.J.S.A.* 48:14–149.1 and –149.2, that the suspension be with pay. That motion was denied on the departmental level. Although we are aware of no reported opinion holding an employee in plaintiff's position to be entitled to pay while the charges against him pend, the plain language of *N.J.S.A.* 40A:14–149.1 mandates a suspension with pay even where a criminal or quasi-criminal offense is charged as the basis for the disciplinary proceeding, unless the offense charged is especially grave or an indictment has been returned. It seems logical that, where the conduct charged has no criminal or quasi-criminal qualities, a suspension without pay is unauthorized by law.

*N.J.S.A.* 40A:14–149.1 provides:

Notwithstanding any other law to the contrary, whenever any municipal police officer is charged under the law of this State, another state, or the United States, with an offense, said police officer may be suspended from performing his duties, with pay, until the case against said officer is disposed of at trial, until the complaint is dismissed, or until the prosecution is terminated; provided, however,

that if a grand jury returns an indictment against said officer, or said officer is charged with an offense which is a high misdemeanor or which involves moral turpitude or dishonesty, said officer may be suspended from his duties, without pay, until the case against him is disposed of at trial, until the complaint is dismissed or until the prosecution is terminated.

Plaintiff argues that the authority to suspend—with or without pay—is limited, and may be effected only where violations of state or federal law are involved. Defendant urges that an employee may be suspended even when charged only with violations of departmental rules or regulations, and that such a suspension may be without pay. We note that a disciplinary proceeding for violating a departmental rule or regulation must proceed rather quickly: the charges against the officer must be filed within forty-five days after the department has "obtained sufficient information" to bring them, and the hearing must occur within thirty days after service of the charges on the officer. *N.J.S.A.* 40A:14–147.

The legislative history regarding *N.J.S.A.* 40A:14–149.1 demonstrates that the sponsor's original concern was to protect police officers from "what often are extreme financial hardships because of being suspended without pay as a result of countercharges stemming from the performance of their duties." *Sponsor's Statement to S. 1051* (June 15, 1972). The bill was modified to extend the protection of being paid while suspended to officers who were charged with a crime, other than a "high misdemeanor," regardless of how the charge came to be filed. *Senate County and Mun. Gov't Comm., Statement to S. 1051* (February 5, 1973). That provision in the bill was balanced by the requirement, since codified as *N.J.S.A.* 40A:14–149.3, that an officer who was suspended with pay but later found guilty of the charges is required to reimburse the municipality for the amounts they had received.

Governor Cahill, in considering the bill as presented, was concerned that, in addition to high misdemeanors, there were other charges for which the decision whether a suspension without pay was warranted "should be left to the discretion of the municipality." *Conditional Veto Statement to S. 1051* (November 12, 1973). He identified such matters as charges returned by a grand jury,

and charges "where the offense involves moral turpitude or dishonesty." *Ibid.*

The Legislature, in enacting *N.J.S.A.* 40A:14–149.1, accommodated the Governor's concerns. *See L.* 1973, *c.* 270, § 1. In doing so, it drafted the statute to provide that an "offense" for which a suspension could be without pay was either a "high misdemeanor", or conduct that "involves moral turpitude or dishonesty", or one in respect of which an indictment had been returned.

From this legislative history, it seems clear that the enactment was not designed to limit, in any way, a department's discretion whether or not to suspend an employee pending the resolution of charges. Rather, the intention of the drafters was to protect a police officer from the loss of income and other benefits while the charges pended unless they were of special gravity. Thus, the issue before us is whether the fact that this police officer was charged with violations of departmental rules, as distinguished from statutory standards, insulates him from a suspension without pay.

The juxtaposition of terms may alone clarify their meaning. *Noscitur a sociis,* "an ancient maxim of statutory construction[,]" stands for the principle "that the meaning of words may be indicated and controlled by those with which they are associated." *Germann v. Matriss,* 55 *N.J.* 193, 220, 260 *A.*2d 825 (1970). "The rule is not absolute but it does serve as a helpful guide in ascertaining the intended scope of associated words or phrases in a statute where a particular word is followed by more general words, and the legislative purpose is unclear." *Id.* at 221, 260 *A.*2d 825.

The model that *Germann* describes bears upon the structure that the Legislature used for the statutory language at issue here. The first use of the word "offense" is in the context of a suspension with pay even where a violation of state or federal law has been charged. The second use of the word "offense", permitting a suspension without pay, is modified by the term "which is a high

misdemeanor," a specific reference to crimes of particular gravity, and by a phrase, "which involves moral turpitude or dishonesty," that could be seen as more general, including departmental rule violations in addition to crimes. This second use also comprehends the return of an indictment.

When confronting such a pattern in statutory language, "it is wise to employ the maxim to avoid giving a breadth to the more general words which logic, reason and the subject matter of the statute do not show was clearly intended." *Ibid.* There is nothing in the language of *N.J.S.A.* 40A:14–149.1 to suggest that the Legislature intended the basic meaning of the word "offense" to change between the first and second uses. The scope of the term's use in the second instance to refer to conduct "involving moral turpitude or dishonesty" or grave crimes or the return of an indictment as predicates for suspending without pay encompasses very serious conduct which, if not prohibited by statute, is as opprobrious as that which is. This interpretation is also supported by the inherent logic of the situation, to which we have already alluded.

Thus, suspensions without pay are precluded for officers charged solely with violations of departmental rules or regulations, except where conduct equivalent to the most serious of crimes involving moral turpitude or dishonesty is supportably alleged. Petitioner was, accordingly, entitled to be paid during his suspension because no charge against him was of the prescribed gravity. If we have misconstrued the legislative design, the Legislature can surely amend the statute to resolve the question differently in future situations.

That portion of the judgment upholding plaintiff's demotion and termination is affirmed. The remainder, providing no salary or other employment benefits during the period of suspension, is reversed and remanded for a determination of plaintiff's entitlement, subject to his duty to mitigate, and for the entry of judgment therefor.