**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2386-19

MICHAEL MUSSER,

     Plaintiff-Appellant,

v.

EASTAMPTON TOWNSHIP
POLICE DEPARTMENT,

     Defendant-Respondent.

_____

Submitted March 16, 2022 – Decided March 25, 2022

Before Judges Sumners, Vernoia, and Firko.

On appeal from the Superior Court of New Jersey, Law Division, Burlington County, Docket No. L-2490-17.

Fusco & Macaluso Partners, LLC, attorneys for appellant (Amie E. DiCola, on the briefs).

Armando V. Riccio, attorney for respondent.

PER CURIAM

     In this police disciplinary action, plaintiff Michael Musser sought reinstatement to his position as a police officer with defendant Eastampton

Township (the Township), back pay, and counsel fees following an administrative determination of misconduct. Plaintiff appeals from a January 3, 2020 Law Division order denying his application for reinstatement, dismissing his complaint, and affirming the administrative decision. We affirm.

I.

We begin with a review of the relevant controlling authority. Because the Township is a non-civil service jurisdiction, the statutory framework for disciplinary proceedings against police officers is governed by N.J.S.A. 40A:14-147 to -151. Ruroede v. Borough of Hasbrouck Heights, 214 N.J. 338, 343 (2013). That statutory scheme requires the Township to demonstrate "just cause" for any suspension, termination, fine, or reduction in rank. Id. at 354 (quoting N.J.S.A. 40A:14-147). Pursuant to N.J.S.A. 40A:14-147, just cause includes "misconduct."

Our Supreme Court has recognized "misconduct" under N.J.S.A. 40A:14-147 "need not be predicated on the violation of any particular department rule or regulation," but may be based merely upon the "implicit standard of good behavior which devolves upon one who stands in the public eye as the upholder of that which is morally and legally correct." In re Phillips, 117 N.J. 567, 576 (1990) (quoting In re Emmons, 63 N.J. Super. 136, 140 (App. Div. 1960)).

2

Because "honesty, integrity, and truthfulness [are] essential traits for a law enforcement officer," the Court has upheld termination where, for example, an officer made conflicting statements to internal affairs investigators about an off-duty altercation. Ruroede, 214 N.J. at 362-63; see also State v. Gismondi, 353 N.J. Super. 178, 185 (App. Div. 2002) ("[T]he qualifications required to hold [a law enforcement] position require a high level of honesty, integrity, sensitivity, and fairness in dealing with members of the public . . . .").

Pursuant to N.J.S.A. 40A:14-150, an officer is entitled to a hearing, and, if convicted of any charge, he or she may seek review in the Superior Court. Ruroede, 214 N.J. at 355. The trial court's review is de novo. Ibid. And, the trial court must provide "an independent, neutral, and unbiased" review of the disciplinary action, and make its own findings of fact. Id. at 357 (citing Phillips, 117 N.J. at 578, 580). The court must "make reasonable conclusions based on a thorough review of the record." Ibid. (quoting Phillips, 117 N.J. at 580). "Although a court conducting a de novo review must give due deference to the conclusions drawn by the original tribunal regarding credibility, those initial findings are not controlling." Ibid. (quoting Phillips, 117 N.J. at 579).

Our role in reviewing the de novo proceeding is "limited." Phillips, 117 N.J. at 579. "[W]e must ensure there is 'a residuum of legal and competent

evidence in the record to support'" the court's decision. Ruroede, 214 N.J. at 359 (quoting Weston v. State, 60 N.J. 36, 51 (1972)). We do not make new factual findings, but merely "decide whether there was adequate evidence before the . . . [c]ourt to justify its finding of guilt." Phillips, 117 N.J. at 579 (quoting State v. Johnson, 42 N.J. 146, 161 (1964)). "[U]nless the appellate tribunal finds that the decision below was 'arbitrary, capricious[,] unreasonable[,]' or '[un]supported by substantial credible evidence in the record as a whole,' the de novo findings should not be disturbed." Ibid. (fourth alteration in original) (quoting Henry v. Rahway State Prison, 81 N.J. 571, 580 (1963)). On the other hand, we do not refer to the trial court's legal conclusions. Cosme v. Borough of E. Newark Twp. Comm., 304 N.J. Super. 191, 203 (1997) (citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

II.

Against this legal backdrop, we turn to the facts pertinent to this appeal. Less than five hours before the start of his shift on August 8, 2016, plaintiff called out sick in order to go on a family vacation in Orlando, Florida. He claimed to have recurring back pain and spasms from two herniated lumbar discs. That morning, plaintiff, his girlfriend, Dawn Janelli, and his two children

A-2386-19

boarded a 7:05 a.m. Southwest Airlines flight from Philadelphia, Pennsylvania to Orlando.

After landing in Orlando, plaintiff received a text message from a co-worker advising there had been a traffic fatality in the Township during his missed shift. In response, plaintiff revealed he had already landed in Florida. Suspecting a violation of sick time regulations, the Township initiated an internal affairs (IA) investigation. On August 25, 2016, the Township served plaintiff with a notice of an IA investigation concerning his "misuse of sick time."

The following day, the Township provided plaintiff with a memorandum requesting an explanation for his calling out sick for the August 7, 2016 nightshift and supporting medical documentation for the injury or illness that prohibited him from coming to work. Further, the memorandum required plaintiff to:

> provide information on [plaintiff's] flight plans to Florida to include ([f]light #'s, airport name[s] and location[s], arrival date [and] time at the airport, departure time from the airport, and the time your plane arrived in Florida on 8/8/16). Please also include any supporting documentation to include a copy of your ticket, ticket confirmation, etc. . . .
>
> [(Last alteration in original).]

Two weeks later, plaintiff filed his initial report indicating he called out sick due to his "lower back going out and causing spasms in [his] upper back," and he would be confined at home. Regarding the flight, plaintiff reported:

> My scheduled vacation to Orlando[,] Florida had an original [f]light time of 4:00 [p.m.] on August 8th on Southwest [A]irlines out of Philadelphia with an arrival time of 6:15 [p.m.] in Orlando.
>
> Because I was out sick my girlfriend [Janelli] took it upon herself to call the airline on August 7th to try and get an earlier flight for August 8th. . . . [Janelli] was advised by the airline that we could be on standby[,] which means go to the airport and could possibly get an earlier flight if there was a cancellation or the flight was not sold out, if the flight was full we would have to take the 4:00 flight. It would have been a [fifty-fifty] chance. Since I couldn't sleep due to the pain in my back we headed for the airport on August 8th. We had to be at the airport no later than [7:00 a.m.] At the airport we were able to get the earlier flight. The plane left at 7:30 [a.m.] and we arrived in Orlando around 9:55 [a.m.]
>
> I do not have receipts for the plane tickets because [Janelli] paid cash for the tickets and didn't think she would need receipts. I also do not have boarding passes because it was Southwest Airline['s] procedure to take your boarding pass as you enter the plane.
>
> I did not take a sick day due to going on vacation.
>
> [(Emphases added).]

A-2386-19

On September 29, 2016, plaintiff was interviewed by IA investigators, Lieutenant Joseph Iacovitti and Sergeant Daniel Snyder. During the interview, plaintiff stated the airline tickets were paid for with his Disney credit card, not cash, as his initial report indicated. Plaintiff claimed he was "unaware" his credit card was used to pay for the airline tickets, and he thought that Janelli would be paying off the charge in cash. He also insisted the original departing flight was scheduled for 4:00 p.m., but as a result of Janelli calling Southwest, they flew standby that morning instead.

No documentation to support these contentions was produced by plaintiff; he reported he deleted the emails and could not retrieve them. Plaintiff also represented his credit card company did not provide him with information regarding the 4:00 p.m. departing flight and that he shredded his credit card statements.

The custodian of records for Southwest Airlines, Caroline Hanson, submitted an affidavit and testified at the local hearing. Hanson testified that on August 2, 2016, plaintiff booked a flight departing from Philadelphia at 7:05 a.m. on August 8, 2016, using his credit card. Hanson confirmed plaintiff never flew standby because there was no record of such a change in the airlines' records. Plaintiff's travel agent produced records verifying he did not fly

A-2386-19

standby, corroborating Hanson's testimony. Plaintiff also misrepresented in his initial report that Janelli called Southwest Airlines to change the departing flight to Florida.

At the hearing, Janelli testified she used plaintiff's Disney Visa card to book the flights and that she did not pay cash for the tickets. Boarding passes were printed at 3:41 a.m. Central Standard Time[1] and not after 6:00 a.m., as alleged by plaintiff.

Plaintiff was charged with four offenses:

> Charge One: A violation of Departmental Rule 4:9.4, Unauthorized Absence, and N.J.S.A. 40A:14-147, for misconduct by calling out sick on a night shift on August 7, 2016, and causing the Township to incur unnecessary overtime costs.
>
> Charge Two: Failing to notify his supervisor as to a change in place of confinement on August 7, 2016, in violation of Departmental Rule 4:9-2, "Unauthorized Absence," as per the Eastampton Twp. Police Manual.
>
> * * * *[2]
>
> Charge Four: Being untruthful in a special report and in an oral interview with IA officers and misrepresenting the circumstances of his "sick out,"

---

[1] Hanson testified the airline recorded the time in Central Standard Time, and not Eastern Standard Time. This is not germane to our decision.

[2] The record reflects charge three pertained to a separate incident that was not sustained at the local level and was not raised in any of the prior proceedings.

details of his airline flight/time, and method of payment. This charge also alleged a pattern of sick time use before/after the use of vacation time in violation of Departmental Rule 3:12.5, Truthfulness, (Eastampton Twp. Police Manual), and N.J.S.A. 40A:14-147 (Misconduct).

The Township sought a three-day suspension for charge one; a two-day suspension for charge two; and termination of employment for charge four. Plaintiff pled not guilty to the charges and requested a formal hearing. Township manager Eric Schubiger presided over the three-day local disciplinary hearing. Plaintiff, Janelli, plaintiff's chiropractor Dr. Frank Michell, Lieutenant Iacovitti, and Hanson testified at the hearing.

Plaintiff testified he could not explain why the Southwest documents indicated: (i) an August 2nd purchase date; (ii) a pre-scheduled, non-standby, 7:05 a.m. departure; or (iii) why the boarding pass printouts reflected a time of 4:41 a.m. Plaintiff also testified that he understood the Township's sick policy and stipulated to his failure to advise a supervisor regarding his change in confinement at home for his purported back pain. In addition, plaintiff "acknowledged that lying is very much at odds with setting a good example," and he agreed "all officers are required to meet the highest standards of integrity."

9

On October 23, 2017, Schubiger issued a twenty-six-page written decision terminating plaintiff's employment. Schubiger explained "[i]t simply strains credulity to suggest that the [a]irline's well[-]documented testimony is inaccurate, and the undocumented story of [plaintiff] . . . is the correct version." Schubiger found that Southwest Airline's evidence:

> established that [plaintiff]'s flights were booked on August 2, 2016, using his Visa card and the airline itinerary was emailed to him that same day. [Plaintiff] lied when he represented that his August 8, 2016 flight to Orlando was originally scheduled for 4[:00] p.m. He also lied when he claimed that the flight was changed after the original booking.
>
> Evidence and testimony obtained from Southwest Airlines clearly undermines any existence of a flight leaving Philadelphia for Orlando on August 8, 2016 with a scheduled departure time of 4[:00] p.m. The airline's records and testimony are clear and unequivocal: no 4[:00] [p.m.] flight as claimed by [plaintiff] and Janelli. Moreover, if there had been a phone call or flight change it would have been recorded within the airline's records.
>
> . . . Hanson confirmed that any change in [plaintiff]'s flight would be reflected under "History" within Southwest's records. Any change made to [plaintiff]'s Southwest reservation, even by a travel agent, would be reflected within the airline's records.
>
> Recapping her testimony, . . . Hanson confirmed that there was no change to [plaintiff]'s August 2nd reservation for his flight from Philadelphia to Orlando

10

and had there been any change since August 2nd it would have been reflected within Southwest's records.

[Plaintiff] did not fly standby on August 8, 2016.

[(Citations omitted).]

Schubiger also found plaintiff "lied regarding the time of his departure from his home" because Southwest's evidence "clearly undermine[d]" plaintiff's accounts. In conclusion, Schubiger found plaintiff and Janelli "did not tell the truth."

In assessing the penalty for plaintiff's misconduct, after reciting the relevant departmental regulations and applicable case law, Schubiger noted:

> [L]ying during an [IA investigation] concerning your whereabouts and motivations, despite overwhelming evidence to the contrary ruins an officer's credibility. It becomes impossible for his fellow officers, his supervisors, and ultimately, the fact[-]finders in his cases to trust the officer's word. Once this occurs, the individual is no longer able to function as a police officer. The stain cannot be removed. No amount of retraining will cure the ill. There is only one appropriate penalty to protect the taxpayers. Termination.

On November 3, 2017, plaintiff appealed for de novo review before the Law Division pursuant to N.J.S.A. 40A:14-150. Thereafter, on November 15, 2017, plaintiff filed a complaint in lieu of prerogative writs. After subsequent briefing and oral argument, the trial court issued a written statement of reasons

upholding plaintiff's termination and dismissing the complaint. A memorializing order was entered. Plaintiff appealed, and on July 30, 2019, we granted plaintiff's motion for remand and instructed the trial court to reconsider the matter under the de novo standard of review as required by N.J.S.A. 40A:14-150 within sixty days.[3]

On December 18, 2019, the trial court issued a new statement of reasons in compliance with our mandate. The court found plaintiff "made a number of untruthful statements supported by substantial credible evidence in the record as a whole" and that he violated the Township's sick time policy. Citing the controlling authority, the court ultimately concluded in a nineteen-page, single-spaced written decision, that the Township met its burden and proved misconduct pursuant to N.J.S.A. 40A:14-147. An order was entered on January 20, 2020, sustaining the termination and dismissing plaintiff's complaint with prejudice. This appeal followed.

### III.

On appeal, plaintiff primarily contends the trial court's finding of misconduct, based on his dishonesty in using sick time and preparing his initial report, was manifestly mistaken and unsupported by substantial credible

---

[3] Defendant did not oppose plaintiff's motion for remand.

evidence in the record. Plaintiff also argues termination was a disproportionate penalty in view of the circumstances and not in accordance with the tenets of progressive discipline.

We reject these contentions in light of the record and applicable legal principles. Pursuant to our "limited" standard of review, Phillips, 117 N.J. at 579, we affirm substantially for the reasons expressed in the trial court's comprehensive written decision, recognizing it "is based on findings of fact which are adequately supported by the evidence" in the record. R. 2:11-3(e)(1)(A). In doing so, we determine the court's decision was not arbitrary, capricious, or unreasonable. Phillips, 117 N.J. at 579. We add only the following remarks.

In reaching its decision, the trial court meticulously parsed the evidence, including plaintiff's previous IA investigations, unfavorable evaluations, the Southwest Airline documents, the Township's Sick Out policy and recordation. Plaintiff's claim that the court ignored substantial credible evidence in the record is unavailing.

In particular, plaintiff embellishes the record when he claims the evidence "is in equipoise," and "[t]here is no direct evidence that [he] was untruthful besides mere speculation that [his] version[] of the facts must be wrong."

13

Plaintiff's argument is belied by the record, which is replete with evidence of his deceitful behavior and misrepresentations about the events leading up to his Florida trip.

It is clear from the record and unrefuted evidence presented by Southwest Airlines that plaintiff flew from Philadelphia to Florida on August 8, 2016, at 7:05 a.m. His boarding pass was printed at the airport check-in at 4:41 a.m. He did not request a standby flight. Plaintiff maintained his email account was hacked and deleted, precluding him from substantiating his version of events. But the record shows plaintiff's laptop was later reconfigured to factory settings based upon the suggestion of a Best Buy representative. Curiously, there is no record of this interaction either.

We are also unpersuaded by plaintiff's argument that the trial court only made "generalized findings" and yielded an "unclear" decision. The court conducted a de novo review of the record and did not simply adopt the hearing officer's findings. Instead, the court considered the evidence anew and made its own findings based on the local hearing record evidence.

Our Court stated, "[d]e novo means, trying the matter anew, the same as if it had not been heard before and as if no decision had been previously rendered." Hous. Auth. of City of Newark v. Norfolk Realty Co., 71 N.J. 314,

A-2386-19

326 (1976) (internal quotations omitted) (quoting Farmingdale Supermarket, Inc. v. United States, 336 F. Supp. 534, 536 (D.N.J. 1971)).  A "careful sifting and weighing of the evidence and independent findings of fact" are "hallmark[s] of a de novo trial."  King v. Ryan, 262 N.J. Super. 401, 412 (App. Div. 1993).  A de novo hearing provides the "reviewing court with the opportunity to consider the matter anew, afresh [and] for a second time."  Phillips, 117 N.J. at 578 (second alteration in original) (internal quotation marks omitted) (quoting Romanowski v. Brick Twp., 185 N.J. Super. 197, 204 (Law Div. 1982)).

We have outlined the boundaries of a sufficient de novo review in the context of N.J.S.A. 40A:14-150 proceedings.  In King v. Ryan, the local police committee made no explicit factual findings, sustained a perjury charge against an officer, and recommended termination.  262 N.J. Super. at 408.  The Law Division affirmed, finding "substantial evidence which support[ed] the conclusion" below.  Id. at 412.

On appeal, we explained that despite "noting his statutory obligation to afford plaintiff a de novo hearing," the Law Division judge, who employed a deferential standard, failed to analyze "the evidence adduced before the police committee" and failed to make "any [independent] findings of fact."  Id. at 411.  Because the local hearing's findings of fact and conclusions of law spanned no

more than a few conclusory sentences, and since the judge's review lacked any independent factual findings or legal conclusions, the decision was an insufficient de novo review. Id. at 412.

In Cosme v. Borough of East Newark Township Committee, a local hearing sustained charges and sought termination of a patrolman. Upon de novo review in the Law Division pursuant to N.J.S.A. 40A:14-150, the trial judge explained "[t]he court finds no reason to challenge [the hearing officer's] findings as to the facts he determined and as to the credibility of the witnesses . . . . The record amply supports the finding that Patrolman Cosme['s] . . . conduct clearly merited disciplinary action." 304 N.J. Super. 191, 200 (App. Div. 1997).

We rejected Cosme's argument, determining the judge's findings were "well supported by the record." Id. at 206. In fact, we held the judge "was well warranted in evaluating the circumstances here as amounting to a major breach of conduct and discipline." Id. at 207. We reach the same conclusion here.

Schubiger reviewed the IA documents gathered from its investigation and heard live testimony from several witnesses, including plaintiff. In his comprehensive written decision, Schubiger summarized the testimony elicited, evidence introduced, and authored nine pages of findings and legal analysis.

The trial court possessed the audio recordings of the local hearings, Schubiger's

decision, and had the benefit of supplemental briefing and oral argument.

In its decision, the trial court found:

> In August 2016, [plaintiff], his girlfriend[4] . . . and his children planned a trip to [] Orlando. [Janelli] had purchased tickets from Southwest Airlines for the trip to Florida on August 8, 2016. The trip was scheduled for 7:00 a.m., not at 4:00 p.m., contrary to [Janelli's] testimony and in accordance with testimony from a Southwest employee. [Plaintiff] called out sick the day before the flight in violation of [Eastampton Police Department's (EPD)] Sickout Policy set forth in the EPD employee handbook of September 21, 2013. He also did not advise the EPD of the change in his confinement from home to travel out-of-state.
>
> In connection with the above, [plaintiff] made a number of untruthful statements supported by substantial credible evidence in the record as a whole. . . . These lies violated the Law Enforcement Code of Ethics, relevant Departmental Rules, N.J.S.A. 40A:14-147, the Attorney General Guidelines applicable to [IA] investigations, and relevant case law referenced earlier.

Unlike in <u>King</u> where the local hearing announced perfunctory

conclusions, the local hearing here produced a lengthy decision with a full

---

[4] The trial court erroneously referred to plaintiff's girlfriend as Caroline Hanson. Hanson was the Southwest Airlines records custodian; Dawn Janelli is plaintiff's girlfriend.

catalogue of evidence and arguments. As in Cosme, the trial court here had an extensive record from the local hearing.

Plaintiff asserts the trial court's decision lacks findings of fact and conclusions of law. We disagree. Unassailable evidence in the record established the nature and severity of plaintiff's misconduct. Moreover, the trial court's decision evinces its "careful sifting" of the evidence necessary to make independent factual findings. See King, 262 N.J. Super. at 412. The court's N.J.S.A. 40:14-150 de novo review does not require piece-by-piece credibility assessments and granular explanations, so long as the record relied upon contains sufficient findings from which the court may "make reasonable conclusions based on a thorough review of the record." Ruroede, 214 N.J. at 357 (quoting Phillips, 117 N.J. at 580). Therefore, we conclude the trial court's decision adhered to the de novo standard and was based upon substantial credible evidence in the record.

IV.

Next, plaintiff argues that in the event the charges are affirmed, the trial court erred by not applying progressive discipline. He contends termination "is a disproportionate penalty when compared to the totality of the circumstances

and the [tennets] of progressive discipline."  The Township asserts termination was warranted in light of the seriousness of the disciplinary infractions.[5]

Progressive discipline "generally requires a progression of steps to address the employee's deficiencies before removal."  Klusaritz v. Cape May Cnty., 387 N.J. Super. 305, 312 (App. Div. 2006).  While one's past record cannot prove a current charge not based upon habitual misconduct, it may present "guidance in determining the appropriate penalty for the current specific offense."  In re Carter, 191 N.J. 474, 484 (2007) (quoting Town of W. N.Y. v. Bock, 38 N.J. 500, 522-23 (1962)).

However, progressive discipline is not "a fixed and immutable rule to be followed without question."  Ibid.  Rather, "some disciplinary infractions are so serious that removal is appropriate" even despite "a largely unblemished record."  Ibid.  Though it remains a "worthy principle," progressive discipline need not be considered "when the misconduct is severe, when it is unbecoming to the employee's position or renders the employee unsuitable for continuation

---

[5] In his appendix, plaintiff includes a number of past counselling notices dating back to 2010 to show that he "had never been disciplined beyond a demotion from officer in charge and a written reprimand" ostensibly to support his argument on progressive discipline.  These documents were not part of the record below.  Thus, even if the notices possessed any evidentiary value, we cannot consider documents in an appendix that were not part of the record below.  See Venner v. Allstate, 306 N.J. Super. 106, 110-11 (App. Div. 1997).

in the position, or when application of the principle would be contrary to the public interest." In re Herrmann, 192 N.J. 19, 33, 36 (2007).

To determine the appropriateness of a disciplinary sanction, courts assess whether the "punishment is so disproportionate to the offense, in light of all the circumstances, as to be shocking to one's sense of fairness." Id. at 28-29, (quoting In re Polk, 90 N.J. 550, 578 (1982)). Our Supreme Court has warned "courts should take care not to substitute their own views of whether a particular penalty is correct for those of the body charged with making that decision." Carter, 191 N.J. at 486.

Courts routinely eschew progressive discipline and terminate police officers for severe misconduct. See, e.g., McElwee v. Borough of Fieldsboro, 400 N.J. Super. 388, 397 (App. Div. 2008) (finding police officer's continued refusal to patrol as instructed was "misconduct is so serious that progressive discipline need not be imposed"); Cosme, 304 N.J. Super. at 207 (holding police officer who left for Cancun knowing his vacation may have been cancelled constituted a "major breach of conduct and discipline" warranting termination); Ruroede, 214 N.J. at 362 (2013) (positing termination warranted for police officer who made "inconsistent statements during the course of the [IA] investigation").

A-2386-19

It is self-evident that police officers are "constantly called upon to exercise tact, restraint and good judgment in [their] relationship with the public" and "must present an image of personal integrity and dependability in order to have the respect of the public." Moorestown Twp. v. Armstrong, 89 N.J. Super. 560, 566 (App. Div. 1965). Police officers are held to a higher standard as "one of the obligations [they] undertake[] upon voluntary entry into the public service." Phillips, 117 N.J. at 577 (quoting In re Emmons, 63 N.J. Super. 136, 142 (App. Div. 1960)). For police officers, truthfulness is an "essential trait." Ruroede, 214 N.J. at 362.

Here, plaintiff's own testimony demonstrates that he was aware of his obligation to tell the truth. Plaintiff knew that police officers are held to the highest standards of integrity. Because he served the public, plaintiff was required to perform his job with "honesty and fidelity." In considering the appropriate penalty for plaintiff, the trial court noted the numerous false statements in his initial report responding to the charges, in his IA interview, as well as under oath at the local hearing.

Aside from constituting a violation of the Township's Departmental Rule 3:12.5, untruthfulness is at odds with the vital role police officers occupy in our society. Since truthfulness is an essential element of a police officer's duties,

termination for persistent untruthfulness cannot be so disproportionate a penalty as to "shock the conscience." Rather, terminating an untruthful police officer serves the public interest. Accordingly, the trial court did not err by finding termination to be an appropriate penalty.

Any arguments made by plaintiff that we have not expressly addressed are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION