**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0934-22

DONALD BUCCI,

    Plaintiff-Appellant,

v.

TOWNSHIP OF HAMILTON,

    Defendant-Respondent.

_____

Argued September 16, 2024 – Decided December 13, 2024

Before Judges Sumners and Perez Friscia.

On appeal from the Superior Court of New Jersey, Law Division, Atlantic County, Docket No. L-1928-20.

Stuart J. Alterman, attorney for appellant (Alterman & Associates, LLC, attorneys; Stuart J. Alterman, on the briefs).

Charles E. Schlager, Jr., attorney for respondent (Blaney, Donohue & Weinberg, PC, attorneys; William G. Blaney, Kyle D. Weinberg, and Charles E. Schlager, on the brief).

PER CURIAM

Following a trial de novo, plaintiff Donald Bucci appeals the Law Division order upholding his termination as a police officer with the Hamilton Township Police Department. We affirm.

Bucci became a Hamilton police officer in 2005, following brief stints with other local police departments. Early in his tenure with Hamilton, Bucci was trained by Field Training Officer (FTO) Gerhard Thoresen regarding his "job functions and responsibilities." The training included how to perform property checks, which is when an officer inspects a property or its grounds to "look for things that are out of place" or suspicious. The Department did not have formal written procedures on conducting property checks.

On November 20, 2017, Bucci's supervisor, Sergeant Christopher Prychka,[1] had concerns about Bucci's purported property check because Global Positioning System (GPS) tracking data for Bucci's patrol car showed he "was not where he said he was" when he reported a property check. The next day, Prychka filed an internal affairs complaint alleging Bucci falsely reported the property check. The Atlantic County Prosecutor's Office (ACPO) declined

---

[1] Prychka was subsequently promoted to lieutenant.

A-0934-22

to investigate the incident, deciding Bucci did not violate a criminal statute based on the internal affairs complaint.

On March 12, 2019, following his investigation, Internal Affairs Unit Lieutenant Gregory Ciambrone[2] issued a report recommending to then-Chief of Police Stacy Tappeiner that Bucci be suspended without pay pending termination. Thirteen days later, Tappeiner decided to suspend Bucci with pay, pending termination.

The Department alleged Bucci did not properly conduct nineteen property checks and was untruthful about them during the internal affairs investigation. Therefore, the Department charged him with conduct unbecoming a police officer, N.J.S.A. 40A:14-147, and violating Department Rules and Regulations, Sections 3.2.4 (Truthfulness),[3] and 3.3.3 (Neglect of Duty).[4]

---

[2] Ciambrone has since become the Township's Chief of Police.

[3] Section 3.2.4 provides: "All employees are required to be truthful at all times whether testifying under oath or when not under oath and while reporting and answering questions posed by superior officers and/or internal affairs investigators."

[4] Section 3.3.3 provides:

> Employees shall faithfully and diligently carry out all of the duties and fulfill all of the obligations of their office. Failure to take appropriate action on the

Bucci was also charged under Section 4.1.6,[5] repeated violations, for: (1) being disciplined in 2015 for inaccurately reporting traffic stops; (2) being ordered to complete remedial recordkeeping training in 2016; (3) failing five of his seven semi-annual Department evaluations from January 2014 to June 2017; and (4) receiving performance notices, reprimands, or suspensions for violating seven other Department rules or regulations from May 2008 to March 2019.

The Department appointed an outside hearing officer to conduct a hearing on the charges. In June 2020, after a ten-day hearing over non-consecutive dates from August 2019 to February 2020, the hearing officer issued a 114-page written decision finding Bucci's misconduct was cause for termination. The

---

occasion of a crime, disorder, or other action or condition deserving of police attention or any other omission by an employee which represents an abandonment of one's duties, obligations or assignment is neglect of duty and will subject that employee to discipline.

[5] Section 4.1.6 provides:

Repeated violations of the rules and regulations, policies, procedures, directives or orders shall be indicative of an employee's disregard of the obligations of all employees and shall be cause for dismissal. This shall apply regardless of the severity of the offense and reckoning period, and regardless of whether the violations are of the same type.

hearing officer found the Department's detailed analysis of GPS records depicting the positioning of Bucci's patrol car, combined with Prychka's interviews with Bucci, revealed "Bucci['s] statements were either deceptive or untruthful," as he "was unable to keep his story straight when comparing his internal affairs investigatory interview, the meeting, and his live testimony." The hearing officer decided that, irrespective of Bucci's prior disciplinary history, Bucci's dishonesty was "so egregious" that termination was warranted.

Two weeks later, the Hamilton Township Committee unanimously adopted the recommendation to terminate Bucci. Bucci appealed, filing a Law Division complaint seeking a trial de novo to vacate the termination decision and an order reinstating him to the Department.

The trial judge heard three days of added testimony to supplement the record. Bucci testified he taught himself how to perform property checks and conducted them in Hamilton just as he had in the other towns where he had worked. He claimed Thoresen did not train him on property checks as they performed their checks differently. He also claimed no higher-ranking police officer ever "pull[ed him] aside" to explain "how to do a property check." He testified nobody told him he was "performing property checks in a fashion not

acceptable to the [D]epartment" until Prychka filed the internal affairs complaint against him.

Regarding the specifics of his property checks, Bucci recalled experiencing ten- to forty-second transmission delays using his police car's radio and inconsistent signals using his portable radio during patrols. He also testified that sometimes he forgot to take his portable radio when conducting foot patrol property checks.

Thoresen, however, testified he was "sure [he] taught [Bucci] how to do a property check" during his training. Thoresen said police officers commonly left their police cars to walk around a site during property checks, which did not "necessarily" require "notify[ing] dispatch that [they] were out of the car." He testified Bucci would have learned to perform property checks in this manner. Thoresen would notify dispatch by radio when he conducted foot patrols during property checks. Additionally, he testified he "park[ed] [his] car in one location and walk[ed] to another location [when] calling out [a] property check" multiple times. He had also "call[ed] a property check [] while sitting in [his] car and then walk[ed] to the actual area" he had reported.

The trial judge issued an order and thirty-two-page written decision affirming the hearing officer's findings and sustaining Bucci's termination.

6

Finding the Township proved the charges "by a preponderance of all of the credible evidence," the judge found Bucci's testimony uncredible because: (1) Bucci "was guarded and measured in a manner so as to not be definitive or unequivocal," while the other witnesses were "unequivocal"; (2) the GPS tracking data was "reliable and trustworthy" and corroborated the Township's case; (3) Bucci claimed he was "self-taught" even though Thoresen testified otherwise; and (4) Bucci offered no evidence showing the GPS inaccurately tracked his location. The judge found Bucci "did not conduct the subject property checks in the manner he was trained because [he] was not physically present [at] the relevant locations when he called out the property check[s]."

The judge determined Bucci's claims that he conducted foot patrols were "untruthful" and "fabricat[ed] during the [internal affairs] investigation." The judge further found Bucci's belief that he could report a property check if he was "'relatively close' to [the] property" but not physically on-site, was contrary to the Department's procedures described by other witnesses as the correct way to perform property checks.

The judge rejected Bucci's contention that the Township violated N.J.S.A. 40A:14-147's requirement that a termination had to be charged for "a violation of internal rules and regulations" within forty-five days "on which the person

filing the complaint obtained sufficient information to file" the complaint. Bucci also asserted the Department violated the Off. of the Att'y Gen., <u>Internal Affairs Policy & Procedures</u> (rev. 2022) (IAPPs), by not conducting a timely investigation. Bucci contended his termination charges were filed in March 2019, well beyond the forty-five days after he was accused of falsely reporting his November 20, 2017 property check. The judge accepted Ciambrone's explanation that "he did not have all of the data he needed 'because [the investigation] was a continual process,'" which explained why it took over a year to charge Bucci. The judge found Bucci was formally charged within forty-five days after Ciambrone provided "sufficient information to" Chief Tappeiner, the only person authorized to charge Bucci. Thus, the forty-five-day rule was not violated.

The judge held that Hamilton did not unfairly terminate Bucci because his untruthfulness, neglect of duties as a police officer, and repeated disciplinary infractions showed he could not "present an image of personal integrity and dependability in order to have the respect of the public" and "enforce and uphold the law" as required of law enforcement, rendering progressive discipline inappropriate in this case. <u>In re Carter</u>, 191 N.J. 474, 486 (2007) (citation omitted).

Before us, Bucci reiterates his argument that the Township's termination action was untimely under the IAPPs and violated N.J.S.A. 40A:14-147's forty-five-day rule by waiting to charge him until late March 2019, which was not within forty-five days of January 8, 2018, when the Department learned the ACPO would not conduct a criminal investigation of the internal affairs complaint. Regarding the trial judge's credibility findings, Bucci raises three challenges: (1) the judge incorrectly found he lied about foot patrols, pointing out that Thoresen gave compatible testimony about going on foot patrols during property checks; (2) the judge improperly found he falsely reported property checks as the GPS tracking data and other evidence showed he "did perform the checks he called in to dispatch"; and (3) the Township failed to prove the charges by a preponderance of the evidence because its witnesses gave inconsistent testimony that supported Bucci's explanations. Bucci attacks the Department's property checks procedures as vague, claiming the Department had "no written policies, procedures, rules, or regulations which mandated the form which a property check was required to take," as several witnesses testified at the trial de novo. Lastly, citing In re Stallworth, 208 N.J. 182, 195-96 (2011), Bucci argues that, given his fifteen years of service to the Township, progressive discipline should have been applied to punish him short of termination.

9

We find insufficient merit in these arguments and affirm substantially for the reasons set forth by the trial judge in his thoughtful written decision. We add only the following brief comments.

Pursuant to N.J.S.A. 40A:14-150, such actions are heard de novo to ensure that a neutral, unbiased forum will review the disciplinary decision. In re Disciplinary Procs. of Phillips, 117 N.J. 567, 580 (1990). While a trial judge conducting a de novo review must give deference to the credibility determinations drawn by the original tribunal, those initial findings are not controlling. State v. Johnson, 42 N.J. 146, 157 (1964); Donofrio v. Haag Bros., Inc., 10 N.J. Super. 258, 262 (App. Div. 1950). Instead, "careful sifting and weighing of the evidence and independent findings of fact . . . are the hallmark of a de novo trial." King v. Ryan, 262 N.J. Super. 401, 412 (App. Div. 1993). We are amply satisfied that the judge faithfully adhered to these principles, making his own credibility findings.

Our role is more limited than the trial judge; we do not make new factual findings but simply determine whether there was evidence to support the trial judge's findings. Johnson, 42 N.J. at 161. Unless the decision under review is "arbitrary, capricious or unreasonable" or "[un]supported by substantial credible evidence in the record as a whole," a judge's de novo findings should not be

disturbed. <u>Henry v. Rahway State Prison</u>, 81 N.J. 571, 580 (1980) (citing <u>Campbell v. Dep't of Civ. Serv.</u>, 39 N.J. 556, 562 (1963)). Our application of this standard militates against appellate intervention in the trial judge's decision.

The trial judge's decision reveals careful consideration and evaluation of the record. As for Bucci's discipline, the fact that he provided fifteen years' service to the Hamilton Police Department is of no significance considering his unbecoming conduct and violation of departmental rules and regulations. Moreover, we should not substitute our view of what disciplinary penalty is proper. <u>See</u> <u>In re Carter</u>, 191 N.J. at 486.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

11

A-0934-22