**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1360-24

IN THE MATTER OF CASTAWAY
CANNABIS LLC APPEAL OF
WOMEN-OWNED BUSINESS
ENTERPRISE INELIGIBILITY
DETERMINATION.

_____

Submitted December 17, 2025 – Decided January 13, 2026

Before Judges Mayer and Vanek.

On appeal from the New Jersey Department of the Treasury, Division of Revenue and Enterprise Services.

Vicente LLP, attorneys for appellant Castaway Cannabis LLC (Stephen M. Pemberton and Adam D. Fine, on the briefs).

Matthew J. Platkin, Attorney General, attorney for respondent Department of the Treasury, Division of Revenue and Enterprise Services (Janet Greenberg Cohen, Assistant Attorney General, of counsel; James J. Robinson, Jr., Deputy Attorney General, on the brief).

PER CURIAM

Castaway Cannabis LLC (Castaway) appeals from a December 2, 2024 final agency decision issued by the New Jersey Department of Treasury, Division of Revenue and Enterprise Services (Division) denying its application for recertification as a "woman-owned business enterprise" (WBE) under N.J.S.A. 52:27H-21.17 to -21.24, known as the Department of Commerce and Economic Development Act,[1] and governing regulations, N.J.A.C. 17:46-1.1 to -1.12. We affirm.

Joshua Weaver[2] and JWeaver Management LLC (JWeaver), a company owned by Joshua, formed and registered Castaway on March 11, 2022. Two months later, Joshua filed a certificate of amendment, adding his wife, Marzena, as an owner of Castaway. Following this amendment, the owners of Castaway executed an operating agreement granting shares in the company as follows: 51,000 shares to Marzena; 44,000 shares to JWeaver; and 5,000 shares to Joshua.

---

[1] The Legislature crafted the Department of Commerce and Economic Development Act to encourage the development of businesses owned by minorities and women and to make certain that the businesses benefiting from this legislation were "bona fide minority or women's businesses." N.J.S.A. 52:27H-21.17(c) and (d).

[2] Because Joshua Weaver and Marzena Weaver are married, we refer to them by their first names. No disrespect is intended.

2                                                                          A-1360-24

Prior to executing the operating agreement and before filing the certificate of amendment, Joshua and JWeaver implicitly held equal shares in Castaway. See N.J.S.A. 42:2C-34(a) (granting "equal shares" in LLCs by default). Upon executing the operating agreement, Joshua and JWeaver presumably transferred a portion of their ownership shares in Castaway to Marzena, with Joshua transferring 45,000 of his shares and JWeaver transferring 6,000 of its shares.

After signing the operating agreement, Castaway submitted its first application for WBE certification to the Division. Castaway's application included its certificate of formation and operating agreement. However, Castaway did not include any evidence of a capital exchange by Marzena for her shares in the company. The Division approved Castaway's WBE application on May 26, 2022.[3]

In June 2022, Castaway again amended its certificate of formation, removing Joshua as an owner and replacing him with Mark Kerpen. With the unanimous consent of the managers under the operating agreement, Kerpen received Joshua's 5,000 shares in Castaway.

---

[3] An initial WBE certification and subsequent recertification are valid for one year. N.J.A.C. 17:46-1.4(b).

A-1360-24

In April 2023, Kerpen, Marzena, and JWeaver executed an amended and restated operating agreement (amended agreement). The amended agreement reflected the new ownership of Castaway to include Kerpen. Additionally, it designated Marzena as the "Manager" of Castaway and Joshua as the "Managing Member" of JWeaver.

Around the same time, Castaway applied to the Division for recertification as a WBE. It included the same information as in its prior application, plus new information reflecting Kerpen's ownership of Joshua's previously owned shares in Castaway. In its recertification application, Castaway did not include any evidence that Marzena exchanged capital for her shares in the company.

In reviewing the recertification application, the Division requested additional information from Castaway. The Division specifically asked:

> If the applicant company is a woman owned, operated and controlled business, why is male, Joshua Weaver at JWeaver Management LLC the "Managing Member" [and] female, Marzena[,] is "Manager"? (according to [the] amended operating agreement)[.] Is the applicant company independently owned and operated? What is the business role of JWeaver Management LLC at the applicant company[?]

In response, Castaway cited the amended agreement and stated Marzena is "the sole [m]anager of Castaway" and "has 'full and complete power, authority and discretion for, on behalf of and in the name of' Castaway 'to take such

4

actions as it may in its sole discretion deem necessary or advisable to carry out any and all of the objectives and purposes' of Castaway." Castaway further explained that Joshua was the "Chief Financial Officer of Castaway reporting to the Manager, Marzena." The Division accepted Castaway's explanation and approved the application for WBE recertification.

A year later, in May 2024, Castaway again applied to the Division for WBE recertification. This application included many of the same documents submitted with its prior applications. In addition, Castaway provided several financial documents, identified Joshua's business affiliations, and included the Weaver's tax returns. Again, Castaway did not include any evidence of a capital transfer for Marzena's ownership shares in Castaway.

In reviewing the 2024 recertification application as a WBE, the Division requested additional information regarding Castaway's ownership interests since the company's original formation. In response, Castaway provided a timeline of amendments to the certificate of formation but did not identify any capital exchanged for the acquired ownership interests in the company.

In a June 2024 follow up, the Division asked Castaway to "submit [the] agreement/contract of sale transferring [fifty-one percent] ownership/shares to Marzena Weaver and proof of [p]ayment from her for the [fifty-one percent]

shares acquired (ex: canceled check, bank statements, etc.)." Castaway did not respond to the Division's follow-up request.

In September 2024, the Division renewed its request related to Castaway's ownership interests and proof of payment for such interests in the company. Castaway responded:

> There was no payment for the transfer of [fifty-one percent] of Mr. Joshua Weaver's shares of Castaway Cannabis LLC to Ms. Marzena Weaver. This corporate change was made via a Written Consent of Managers, which amends Schedule A in the Operating Agreement and was signed by Mr. Weaver, the Sole Member at the time, on June 9, 2022.

Based on Castaway's response, in October 2024, a Division auditor concluded Castaway did "not meet the requirements to be certified by the State of New Jersey as a WBE firm." According to the auditor, under the regulations governing the recertification procedure for women's businesses, gifted ownership could not be considered when determining ownership stakes as part of the WBE certification process. In requesting recertification, the Division specifically requires applicants to provide the "[n]ames and addresses of capital investors and the amount of capital contributed. Gifted ownership shall not be considered." N.J.A.C. 17:46-1.4(b)(2)(iii). The auditor explained Castaway's September 2024 response indicated Marzena received her ownership shares as

"a gift" and "New Jersey's Certification Law prohibit[ed] using 'gifted ownership' in determining that an applicant women owner has the minimum [fifty-one percent] of the stock to qualify for WBE status."

Castaway appealed the auditor's decision by filing a protest with the Division. It argued Marzena's acquisition of her ownership shares was not a gift because:

> (1) [Marzena's] equity was transferred to her in exchange for valuable consideration: her sweat equity; (2) Castaway equity in May 2022 had no value; and (3) as the Weavers share finances, the significant financial contributions made by the Weavers to Castaway were as much Marzena's investment in the Company as Joshua.

Castaway further claimed Marzena "meaningfully contributed thousands of hours of work in furtherance of Castaway's success, despite never receiving a salary or compensation of any kind from the company." Thus, it asserted Marzena's "compensation was her [fifty-one percent] equity stake in Castaway." Castaway stated: "the Weavers jointly spent nearly $1 million of their personal funds in 2022 and 2023 to transform Castaway from a worthless shell company into an operational cannabis dispensary." Castaway indicated Marzena "is and has always been the sole and functional manager of Castaway throughout its existence." Castaway requested an in-person presentation under N.J.A.C. 17:46-

7

1.8(f) to address its arguments as part of the Division's administrative review of the auditor's determination.

The Division denied Castaway's protest appeal in a December 2, 2024 written decision. The Division declined Castaway's request for an in-person presentation, stating it was relying on "the relevant statutes, regulations, case law, and documents submitted by Castaway." The Division explained "the issues raised in Castaway's appeal were sufficiently clear such that a review of the record . . . provided . . . the information necessary to determine the facts and render an informed final agency decision on the merits of the appeal submitted by Castaway based upon the written record."

The Division recounted the Legislature's recognition that the participation of women owned businesses in "the nation's business community" was disproportionately low and enacted the Department of Commerce and Economic Development Act to specifically redress that disparity. As the Division noted, the Legislature defined a "[w]omen's business" to include "[a] corporation or other entity whose management and daily operations are controlled by one or more women who own it, and of which at least [fifty-one percent] of the legal beneficial ownership is held by women." N.J.S.A. 52:27H-21.18(i)(3).

The Division concluded "sweat equity" was not a sufficient substitute for an actual capital investment. The Division explained it "specifically selected criteria that it believe[d] place[d] it in the best position to determine that businesses are not merely 'fronts' for businesses controlled by persons other than women" and "capital contribution by an individual [wa]s objective evidence of a commitment to a business." The Division stated:

> [it did] not deny that [Marzena] is active in managing the business or that she qualifies as a woman[, but] . . . the requirements for WBE certification are clear that a business must be [fifty-one percent] or greater owned by a woman or women to be granted certification as a woman-owned business, and that ownership must be based on some capital contribution and may not be gifted at time of application.

The Division noted Marzena did "not dispute that there was no capital contribution in exchange for the [fifty-one] shares Mr. Weaver transferred to Ms. Weaver." In rejecting Castaway's "sweat equity" argument, the Division stated N.J.A.C. 17:46-1.2 and N.J.A.C. 17:46-1.4 focused "on the concept of 'capital' contributed to a company." The distinction was significant because N.J.S.A. 52:27H-21.20, governing procedure for certification of WBEs, provides the Division shall create a procedure for certification to

> [s]creen applicants to ensure that businesses seeking certification are not misrepresenting their status as minority businesses or women's businesses, as the case

9

may be, and that the minority or women's business applicants are, in fact, in the control of members of minority groups or women, and are not merely "fronts" for businesses controlled by persons other than minorities or women.

[N.J.S.A. 52:27H-21.20(d).]

Because Castaway provided "no evidence of a monetary transfer" by Marzena for her shares in the company, the Division found Marzena "was gifted her ownership stake in Castaway" and the company was ineligible for recertification as a WBE under N.J.S.A. 52:27H-21.20.

While denying Castaway's protest appeal, the Division stated Castaway was "welcome to reapply for certification after October 29, 2025, with a sufficient showing that they are entitled to registration as a [WBE], including a showing that there has been capital provided for the shares of Castaway owned by [Marzena]."

On appeal from the Division's denial of its 2024 application for recertification as a WBE, Castaway argues the Division's decision was arbitrary, capricious, and unreasonable. It contends the Division erred in determining evidence of capital contribution by the woman-owner is a dispositive requirement for WBE certification. It claims such a requirement contravenes

the Legislature's intent and the purpose of the WBE program.  We reject these arguments.

In reviewing Castaway's arguments, we recite the Division's role in reviewing applications for certification and recertification as a WBE.  A business seeking certification as a "women's business" must demonstrate the "management and daily business operations are controlled by one or more women who own it, and of which at least [fifty-one percent] of the legal beneficial ownership is held by women."  N.J.S.A. 52:27H-21.18(i)(3).  The Legislature accorded the Division "the exclusive authority within State government to certify to public agencies the eligibility of a business to bid on contracts as a . . . 'women's business' under any program conducted by the public agency for which such certification is so required."  N.J.S.A. 52:27H-21.19.

The Legislature also empowered the Division to "[m]onitor the status of certified businesses to insure continued compliance with the criteria for certification and control by the appropriate persons."  N.J.S.A. 52:27H-21.20(e).

In accordance with its statutory authority, the Division developed a regulatory scheme creating standards for certification of WBEs.  The Division defined "ownership" in the context of WBE as requiring business owners demonstrate they are "responsible for both [the business's] daily and long-term

operation" and "own[] at least [a fifty-one] percent interest in the business." N.J.A.C. 17:46-1.3(d)(1). The regulation further states that "ownership and control by . . . women shall be real, substantial, and continuing, demonstrating authority over the affairs of the business, and shall go beyond the pro forma ownership of the business as reflected in its ownership documents." Ibid. The Division established specific requirements to ensure applicants for WBE certification "are, in fact, in the control of . . . women, and are not merely 'fronts' for businesses controlled by persons other than . . . women." N.J.S.A. 52:27H-21.20(d). Additionally, as relevant to Castaway's appeal, the Division stated "[g]ifted ownership shall not be considered" when determining whether a business is woman owned. N.J.S.A. 17:46-1.4(b)(2)(iii).

In furtherance of these goals, the Division obligates WBEs to be recertified on an annual basis. N.J.A.C. 17:46-1.4(b). As a part of the annual recertification process, the Division requires applicants to include the "[n]ames and addresses of capital investors and the amount of capital contributed." N.J.A.C. 17:46-1.4(b)(2)(iii). To qualify as a WBE, N.J.A.C. 17:46-1.4(b)(2)(iii) requires ownership to be based on some capital contribution and not gifted at the time of application.

Castaway argues the Division's requirement that evidence of some capital contribution be submitted for WBE certification and recertification is arbitrary, capricious, and unreasonable. Castaway asserts Marzena's ownership and control of the company was "real, substantial, and continuing, demonstrating authority over the affairs of the business" in the form of "sweat equity," entitling Castaway to WBE recertification regardless of any capital contribution. Moreover, Castaway contends the Division's decision requiring capital contributions is contrary to the legislative intent regarding certification and recertification of WBEs.

Our review of any agency's decision is limited. In re Stallworth, 208 N.J. 182, 194 (2011). "In order to reverse an agency's judgment, [we] must find the agency's decision to be 'arbitrary, capricious, or unreasonable, or [] not supported by substantial credible evidence in the record as a whole.'" Ibid. (second alteration in original) (quoting Henry v. Rahway State Prison, 81 N.J. 571, 579-80 (1980)). In determining whether agency action is arbitrary, capricious, or unreasonable, we consider:

> (1) whether the agency's action violates express or implied legislative policies,—i.e. the law; (2) whether the record contains substantial evidence to support the agency's findings; and (3) whether the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.

13

> [Alcantara v. Allen-McMillan, 482 N.J. Super. 424, 434 (App. Div. 2025) (citing Allstars Auto Grp., Inc. v. N.J. Motor Vehicle Comm'n, 234 N.J. 150, 157 (2018)).]

We review decisions "by an administrative agency entrusted to apply and enforce a statutory scheme under an enhanced deferential standard." E. Bay Drywall, LLC v. Dep't of Lab. & Workforce Dev., 251 N.J. 477, 493 (2022) (citing Hargrove v. Sleepy's, LLC, 220 N.J. 289, 301-02 (2015)). "[G]enerally, when construing language of a statutory scheme, deference is given to the interpretation of statutory language by the agency charged with the expertise and responsibility to administer the scheme." Acoli v. N.J. State Parole Bd., 224 N.J. 213, 229 (2016). "This deference comes from the understanding that a state agency brings experience and specialized knowledge to its task of administering and regulating a legislative enactment within its field of expertise." In re Election L. Enf't Comm'n Advisory Op. No. 01-2008, 201 N.J. 254, 262 (2010).

Although we are not bound by an agency's interpretation of law, we accord a degree of deference when the agency interprets a statute or a regulation that falls "within its implementing and enforcing responsibilities." Wnuck v. N.J. Div. of Motor Vehicles, 337 N.J. Super. 52, 56 (App. Div. 2001). "The burden

14

of demonstrating that the agency's action was arbitrary, capricious or unreasonable rests upon the [party] challenging the administrative action." In re Arenas, 385 N.J. Super. 440, 443-44 (App. Div. 2006).

Applying these principles, we discern no basis to disturb the Division's decision. The Division's interpretation of the statutes and regulations governing the procedures for certification and recertification of WBEs comported with the Legislature's delegation of that responsibility to the Division. The Legislature expressly granted the Division the authority to establish and enact WBE certification procedures to prevent businesses from benefiting from the program by placing a woman in a perfunctory ownership role. N.J.S.A. 52:27H-21.20(d).

To accomplish this goal, the Division adopted a capital contribution requirement for women owners to qualify for the WBE program. N.J.A.C. 17:46-1.4(b)(2)(iii). The regulation expressly states "[g]ifted ownership may not be considered" for WBE certification. Ibid. We are satisfied the Division properly interpreted the regulation, stating the lack of capital contribution for an ownership interest by an applicant seeking certification or recertification as a WBE constitutes an impermissible gifted ownership, rendering a business ineligible for designation as a WBE.

A-1360-24

Castaway acknowledges the relevant statutes do not define the term "gift." When interpreting a statute, "[t]he juxtaposition of terms may alone clarify their meaning," and "the meaning of words may be indicated and controlled by those with which they are associated." Herzog v. Twp. of Fairfield, 349 N.J. Super. 602, 607 (App. Div. 2002) (quoting Germann v. Matriss, 55 N.J. 193, 220 (1970)). While not directly defining the term "gift," the capital contribution language preceding the gifted ownership language in the statute implies the consideration necessary to satisfy the requirement to be deemed a WBE must be a capital contribution rather than simply any consideration, including "sweat equity." See N.J.A.C. 17:46-1.4(b)(2)(iii).

Having reviewed the record, the Division's decision was not arbitrary, capricious, or unreasonable. Marzena's "sweat equity" in Castaway does not replace the explicit capital contribution requirement under the statute for WBE recertification. Nothing in the record demonstrates Marzena exchanged capital for her shares in Castaway. Because Marzena's shares in Castaway were gifted in the absence of any evidence of a capital contribution, the company was ineligible for WBE status.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-1360-24